641 A.2d 774 (1994)
In re D.M.
No. 93-050.
Supreme Court of Vermont.
April 1, 1994.
Motion for Reargument Denied May 5, 1994.
*775 Jeffrey L. Amestoy, Atty. Gen., Montpelier, and Barbara L. Crippen, Asst. Atty. Gen., Waterbury, for plaintiff-appellee.
Henry Hinton, Appellate Defender, Montpelier, for juvenile.
Michael Rose, St. Albans, for defendant-appellant father.
Robert Paolini and Charles Martin of Martin & Paolini, Barre, for defendant-appellant mother.
Before ALLEN, C.J., and GIBSON, DOOLEY and JOHNSON, JJ.
ALLEN, Chief Justice.
J.M., the father, and G.M., the mother, of D.M. appeal the termination of their residual parental rights. We affirm.
In November 1987, D.M., then age nine, reported to a neighbor that she had been physically abused by both parents and sexually abused by her father. D.M. was placed in the custody of the Department of Social and Rehabilitation Services (SRS) and lived with the neighbor for one month. A medical examination uncovered evidence that the child had suffered physical and sexual abuse.
Based on this evidence, the father was charged with lewd and lascivious conduct, and SRS petitioned to have D.M. declared a child in need of care or supervision (CHINS). The father was convicted in May 1988. By stipulation of all concerned parties, the merits order in the CHINS proceeding was entered contingent on the father's conviction being upheld on appeal.
Originally, the SRS case goal called for eventual reunification of parents and child. To that end, in the disposition order issued September 14, 1988, the court mandated individual therapy for D.M., and supervised social and therapeutic visits between D.M. and her mother and siblings. By agreement of the parties at the disposition hearing, the order also precluded contact between D.M. and her father until he had successfully participated in sex offender therapy. While incarcerated pending his appeal, the father refused to participate in any treatment programs for sex offenders, because they required him to admit the abusive acts.
An administrative review of the SRS case plan was held in November 1989. Reports showed that the therapeutic visits between mother and daughter had not been entirely productive, because the mother refused to believe D.M.'s allegations of abuse and implicitly blamed her for upsetting the family and causing her father to be jailed. The goal of the plan remained reunification, but with the caveat that a permanent plan, which might include adoption, would be developed if six months passed without significant progress in the mother-daughter therapy sessions. Rather than improve, the relationship deteriorated further after the mother explicitly and angrily blamed D.M. for the family's problems. D.M. became depressed and expressed thoughts of suicide.
At the next administrative review in May 1990, the SRS case plan was altered to reflect a goal of adoption instead of reunification. The plan called for individual therapy *776 for the mother and D.M., dropping the joint therapy sessions originally recommended. D.M. continued occasional visits with her mother and siblings under the condition that no mention be made of the abuse, court proceedings, or adoption. The second eighteen-month case review, in October 1990, continued to call for adoption.
The father's conviction was reversed in February 1991, and the case was dismissed in January 1992. As stipulated, the CHINS finding was vacated and a new merits hearing was held in the spring and summer of 1991. In an order dated October 8, 1991, the family court again ruled D.M. to be a CHINS based on findings that her father had sexually abused her. By that time, D.M. had been in foster care for four years. In preparation for the disposition hearing, SRS filed a report proposing a goal of long-term foster care and eventual adoption, "because reunification would not be in the best interest" of D.M. The family court issued a disposition order dated November 22, 1991, in which the court found that the parents did not believe D.M.'s allegations, were mentally incapable of coping with her, and did not want her in their home. The court concluded that the parents were unfit and demonstrably incapable of providing an appropriate home for D.M., and that separation was necessary for the child's welfare. Custody and guardianship of D.M. was transferred to SRS.
At an administrative review hearing in April 1992, SRS changed its case goal to termination of residual parental rights. On October 23, 1992, the father filed a motion for relief from the October 8, 1991 merits order, alleging that justice required reconsideration of the order in light of newly discovered evidence. The family court denied the motion without a hearing. In an order dated January 12, 1993, the family court terminated the residual parental rights of the mother and father. The court found sufficient stagnation in the child's relationship with each parent to qualify as a substantial change in material circumstances, and that termination would be in the best interest of D.M.
On appeal, both parents challenge the conclusion of a substantial change in circumstances, but for different reasons. The father does not disagree with the finding of stagnation, but argues that SRS was the cause, and therefore the finding cannot serve as the basis for termination of his parental rights. The mother contends that any stagnation in her relationship with her daughter falls short of a substantial change in circumstances. She also takes issue with the conclusion that termination of her rights is in D.M.'s best interest.

I.
Before turning to the appeals of the termination order, we first address the father's argument that the family court improperly denied his motion for relief, and that at the very least he was entitled to a hearing on the matter. The motion was filed pursuant to V.R.C.P. 60, which in relevant part provides:
On motion and upon such terms as are just, the court may relieve a party . . . from a final . . . order . . . for the following reasons: . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial. . .; or (6) any other reason justifying relief from the operation of the judgment.
V.R.C.P. 60(b)(2), (6) (applicable to family court proceedings under V.R.F.P. 3, 2). We review the trial court's decision on this motion for abuse of discretion only. Slansky v. Slansky, 150 Vt. 627, 629, 556 A.2d 94, 95 (1988). The father bears the burden of demonstrating that the family court has abused its discretion. See Perrott v. Johnston, 151 Vt. 464, 465, 562 A.2d 459, 460 (1989).
The father based his motion on evidence that the neighbor to whom D.M. first reported sexual abuse has since been charged with what he terms crimes of moral turpitude. In both CHINS merits hearings, he contended that this neighbor manipulated D.M. into fabricating stories about physical and sexual abuse for personal gain. He asserts that this new evidence would undermine her credibility significantly, and would invalidate the original CHINS determination and the subsequent termination order.
After reviewing the long history of the case, the family court noted that significant evidence other than the neighbor's original *777 report to SRS supported the finding of sexual abuse. A medical examination corroborated the child's complaints of inappropriate contact. D.M. has never wavered from her story, despite the efforts of both parents to force her to recant and the prospect of losing contact with her siblings until she reaches majority. The court found, and the record shows, that D.M. has had no contact with the neighbor since the month after the abuse was first reported to SRS.
Based on this evidence, the court held that the father's proffered evidence would not alter the result upon rehearing, even if the neighbor were convicted of the charges. The family court reasonably determined that the father's motion was meritless, and therefore did not abuse its discretion in denying the motion. Moreover, it was within the trial court's discretion to deny the motion without a hearing. Blanchard v. Blanchard, 149 Vt. 534, 537, 546 A.2d 1370, 1372-73 (1988).

II.
The father next claims that the termination order cannot stand because the stagnation in his relationship with his daughter, which constituted a substantial change in material circumstances, was caused by SRS. When the original disposition was made, the father was appealing his conviction for the same acts underlying the then-pending CHINS proceeding. He argues that SRS failed to provide him with the opportunity for effective therapy to facilitate reunification when it slated him for sex offender treatment that required he admit the abuse and thereby incriminate himself. In effect, he believes the SRS treatment plan thrust upon him a Hobson's choice between his freedom and his daughter, and that termination exacts an insupportable penalty for his exercise of a constitutional right.
The decision to terminate parental rights is committed to the discretion of the family court, and requires a threshold determination that a substantial change in material circumstances has occurred. In re D.B., 161 Vt. ___, ___, 635 A.2d 1207, 1209 (1993). If the change in circumstances has been established, the court may order termination only upon concluding that severance of the parent-child bond is in the best interest of the child. 33 V.S.A. § 5540.[*] The court's findings must be supported by clear and convincing evidence, and such findings will withstand review unless they are clearly erroneous. In re H.A., 153 Vt. 504, 515, 572 A.2d 884, 890 (1990). If supported by the findings, the court's conclusions of law will be affirmed. Id. at 515, 572 A.2d at 891.
A substantial change in material circumstances is "most often found when the parent's ability to care properly for the child has either stagnated or deteriorated." Id. Stagnation can be shown by the passage of time with no improvement in parental capacity to care properly for the child. In re J.R., 153 Vt. 85, 99, 570 A.2d 154, 161 (1989). Stagnation is also found in cases in which parenting skills improve, yet the improvement is so insignificant that it is unlikely the parent will be able to resume parental duties in a reasonable time. In re D.B., 161 Vt. at ___-___, 635 A.2d at 1209-10. However, the court cannot base a conclusion of a substantial change in circumstances on stagnation caused by factors beyond a parent's control. In re S.R., 157 Vt. 417, 421-22, 599 A.2d 364, 367 (1991).
The evidence shows that the father has made no effort to work toward reunification, despite the therapy made available to him over the past six years. Even assuming he could not participate in sex offender therapy *778 because it would have caused him to incriminate himself, the father had ample opportunity after January 1992, when the criminal charges were dropped, to participate in appropriate sex offender treatment. The family court found, and the father does not contest, that the father steadfastly has denied any responsibility for abusing D.M., and considers himself the innocent victim of his daughter's accusations. These findings support the conclusion that it is unlikely he will be capable of resuming parental responsibilities within a reasonable time, and that the stagnation in father-daughter relations was caused by factors within the father's control. Therefore, the family court did not abuse its discretion in concluding that the threshold substantial change in material circumstances had been met.
In the alternative, the father argues that SRS prematurely set a case goal of termination of parental rights. He asserts that this deprived him of any genuine opportunity to work toward reunification, and that SRS failed to facilitate any progress in that direction. His claims of error, however, do not find support in the record. SRS did set a goal of adoption before the second merits order was entered in October 1991, but this was done over two years after the first reports of abuse and recommended therapy for the father. The second merits order was based on findings of physical and sexual abuse of D.M. virtually identical to those made in the first merits hearing. Under the circumstances, the call for termination of parental rights was not premature.
Unlike the father, who contends that he was not responsible for the substantial change in circumstances, the mother argues that no substantial change in circumstances has occurred in her relationship with D.M. Though she admits to some stagnation, she believes it does not rise to the level of the substantial change prerequisite to the termination of parental rights. In the mother's view, "stagnation" means "substantial stagnation" or "a complete lack of movement toward reunification," not what she characterizes as slow but discernible improvement in her relations with D.M.
The mother's argument runs counter to established law. In termination proceedings, a showing by a parent of some progress does not preclude a finding of changed circumstances if it is unlikely that the parent will be able to resume parental duties in a reasonable time. In re D.B., 161 Vt. at ___-___, 635 A.2d at 1209-10. In this case, the trial court's findings amply support the determination of stagnation.
Despite therapy, the mother has shown no sign of accepting D.M.'s point of view regarding the sexual abuse, much less of believing her daughter. She continues to pressure D.M. to withdraw the allegations and blames D.M. for the disruption in their family life. According to D.M.'s therapist, even if the mother accepted that her daughter was abused, D.M. has been through too much for reunification to become a goal that would be in her best interest. Notwithstanding the mother's claim of slow progress toward understanding and accepting D.M.'s feelings, the court's finding of stagnation was warranted because the evidence shows that there was no reasonable possibility of reuniting the mother and D.M. within a reasonable period of time. In re J.J., 143 Vt. 1, 6, 458 A.2d 1129, 1131 (1983). The court's findings clearly demonstrate that although the mother has made some progress in individual therapy, the progress is minute and does not "preclude a finding of changed circumstances warranting modification of a previous disposition order." In re A.F., 160 Vt. 175, 181, 624 A.2d 867, 871 (1993).
The mother next argues that termination of her parental rights is not in D.M.'s best interest. She asserts that the possibility of reunification within a reasonable period of time exists, and should be given the chance for realization until an alternative, permanent placement arises. Our law is clear, however, that a valid termination of parental rights does not depend on the availability of permanent foster care or adoption. In re E.B., 158 Vt. 8, 15, 603 A.2d 373, 377 (1992). Therefore, we review only the family court's determination that the mother fails to meet the third criterion of 33 V.S.A. § 5540, which requires the court to determine whether *779 she will be able to resume her parental duties within a reasonable period of time.
The record demonstrates that the mother has erected the greatest obstacle to reunification. She refuses to accept that her husband abused D.M. and persists in blaming D.M. for the family problems attendant to the father's prosecution and the family court proceedings. The mother shows no sign of changing her mind within the foreseeable future. D.M.'s counsellor testified that even if the mother came to believe D.M., enough significant damage had accrued to militate against reunification. Based on this evidence, the family court properly found it unlikely that the mother would be able to resume her parental duties within a reasonable time. D.M. has been in state custody for over six years, living with the possibility that she would be returned to a home environment inimical to her physical, emotional and mental well-being. At this point in her life, permanency and stability are in her best interest, and we agree with the family court that this will be possible only through severance of the remaining legal bonds between D.M. and her parents.
Affirmed.
NOTES
[*] Section 5540 requires that the court consider the best interests of the child according to the following four criteria:

(1) The interaction and interrelationship of the child with his natural parents, his foster parents if any, his siblings, and any other person who may significantly affect the child's best interests;
(2) The child's adjustment to his home, school, and community;
(3) The likelihood that the natural parent will be able to resume his parental duties within a reasonable period of time; and
(4) Whether the natural parent has played and continues to play a constructive role, including personal contact and demonstrated love and affection, in the child's welfare.
33 V.S.A. § 5540.