*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-353

MARCH TERM, 2012

| | |
|---|---|
| In re X.L. and N.L., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Bennington Unit, |
| | } Family Division |
| | } |
| | } DOCKET NOS. 149-12-09 & |
| | 14-2-10 Bnjv |

Trial Judge: Karen R. Carroll

In the above-entitled cause, the Clerk will enter:

The family division terminated mother's parental rights to X.L. and N.L., and father's parental rights to X.L. On appeal, mother argues that the court failed to provide her with sufficient notice of the termination hearing. Father argues that the evidence does not support the court's findings that father's ability to parent had stagnated and that father will not be able to resume parenting within a reasonable period of time. We affirm.

This termination case involves mother's two children, N.L., born in September 2007, and X.L., born in October 2009. N.L.'s father voluntarily relinquished his parental rights and did not participate in the termination hearing.

The court found the following facts. In December 2009, X.L. was placed in the custody of the Department for Children and Families (DCF) under an emergency care order because X.L. was losing weight and mother was unable to provide him with sufficient nourishment. X.L. had been in the hospital at the age of one month for failing to thrive, and, although mother had received instruction on improving X.L.'s condition, he continued to lose weight. At the time, mother was caring for the children on her own. X.L.'s father committed a domestic assault against mother prior to X.L.'s birth and was prohibited from contacting her. In February 2010, the court issued an emergency care order regarding N.L. and found that mother could not properly care for the child due to her mental health and inattention to routine care.

In December 2009 and March 2010, the parents entered admissions and stipulated that both X.L. and N.L. were children in need of care or supervision (CHINS). They also agreed with, and the court approved, DCF's disposition plans in both cases, which aimed concurrently for reunification or termination of parental rights.

The case plan required mother to, among other things, provide recommended medical care for the children, maintain safe housing, work with a parent educator, attend therapy, sign releases, attend parenting classes, and update the service provider with her contact information.

Mother did not meet these goals. Her mental health was a primary concern, but she attended therapy only sporadically. She started a parenting program, but it was terminated for her failure to participate. Mother's last contact with her DCF caseworker and her children was March 2011. In April 2011, DCF sent mother a letter, but received no response.

Father has a history of criminal offenses, including domestic violence against mother. X.L. is his eighth, and youngest, child. Father does not have a relationship with his other children. The case plan required father, among other things, to comply with all Department of Corrections (DOC) requirements, attend scheduled visits, complete a parenting class, comply with service provider requirements, engage in therapy, and refrain from committing additional criminal acts. Father also was required to recognize the impact of his domestic violence on his young child and to attend individual counseling to address parenting skills and anger management. Father attended supervised visitation with X.L. The family time coach identified several areas for father to work on including avoiding talking about adult issues during visits and refraining from inappropriate language. Father displayed anger and blamed others for his problems. He made disparaging remarks to X.L. Father made some progress, but continued to bring up adult issues and his own problems at visits. Father was referred for anger management. This therapy was discontinued after father cancelled several visits. Father began a relationship with a woman who displayed angry and aggressive behavior. DCF warned father that the girlfriend would pose a barrier to reunification with X.L., but father continued the relationship. Father has told his DCF caseworker that he is not able to care for X.L.

Since being placed in DCF custody the children were placed in separate foster families. Both N.L. and X.L. have formed strong bonds with their respective foster families. The families intend to adopt the boys and to continue contact between the brothers.

DCF filed petitions to terminate parental rights as to both children. The court sent mother notice of the termination hearing, but it was returned for lack of a forwarding address, and mother was absent at the hearing. Mother's attorney was present and participated. During questioning of mother's DCF caseworker, the caseworker explained that she thought mother was living in Brattleboro with a boyfriend. She also testified that she had sent mother letters in April, which were returned as undeliverable with a notice that mother had moved with no forwarding address.

Following the hearing, the court issued a written decision. As to mother, the court concluded that there was a change of circumstances due to stagnation since mother had failed to satisfy any portion of the case plan. The court found that despite some success, father's progress had also stagnated. The court explained that father continues to have anger issues and had failed to complete anger management counseling. In addition, father continued to bring adult issues up during visits with X.L., and he maintained a relationship with a woman who has a volatile temper and whom DCF has deemed to be an inappropriate caregiver. After examining the statutory best-interests factors, the court concluded that termination was in the children's best interests.

Both parents appeal. The family court has discretion in deciding whether to terminate parental rights. In re D.M., 162 Vt. 33, 38 (1994). Termination requires a threshold showing of a substantial change in material circumstances. Id. "If the change in circumstances has been

established, the court may order termination only upon concluding that severance of the parent-child bond is in the best interest of the child." Id.; see 33 V.S.A. § 5113(b). The most overarching of the best-interests factors is whether the parent will be able to resume parenting within a reasonable period of time. In re J.B., 167 Vt. 637, 639 (1998) (mem.).

We first address mother's appeal, which alleges that the court failed to provide her with individual notice of the termination hearing. At a hearing in X.L.'s case in January 2011, mother was present, and DCF announced its plan to terminate the rights of both parents. At a status conference in May 2011 to discuss setting the termination hearing, mother was absent. The court inquired as to how mother would be notified of the termination hearing. The State responded that it had not received a change of address from mother and would send the notice by regular mail. Mother's attorney indicated that he had corresponded with mother by electronic mail and had expected her at the conference. Mother's attorney believed that mother was still receiving regular mail. The court notified mother of the termination hearing, but the notice was returned as undeliverable with no forwarding address.

Mother's argument relies on In re M.T., in which we held that the family court is required "to provide direct notice of a pending termination petition and hearing to the parents of children who are the subject of the petition, in addition to the parents' attorneys." 2006 VT 114, ¶ 12, 180 Vt. 643 (mem.). We explained that, given "the ominous prospect of permanently losing their children," parents were entitled to direct notice. Id. ¶ 11.

We conclude that the court satisfied the obligation of direct notice articulated in M.T. by mailing direct notice to mother to the last address provided to the court by mother. That the notice was returned due to an incorrect address does not alter the situation since mother had an obligation to notify the court of any change in address. See In re J.L., 2007 VT 32, ¶ 13, 181 Vt. 615 (mem.) (holding that court fulfilled requirements of M.T. by sending notice directly to father even though it was returned due to an outdated address); see also 33 V.S.A. § 5311(f) ("The parent shall be responsible for providing the court with information regarding any changes in address.").

Mother attempts to distinguish In re J.L. on the grounds that in that case the father had actual notice, the father called in at the beginning of the hearing, and the court left the record open to give father an additional opportunity to present evidence. Mother argues that there was no evidence she had actual notice and that the court erred in not affording mother an opportunity to reopen the hearing if her absence was excusable. We find no error. The family division is not required to prove that mother had actual notice. See In re S.W., 2008 VT 38, ¶ 12, 183 Vt. 610 (mem.) (holding that proof of actual notice is not required). The court must send parents a direct notice of a termination hearing, which the court did in this case.

As to mother's contention that the court should have left the hearing open for further evidence, mother fails to demonstrate that she was prejudiced in any manner by the fact that the court did not leave the record open. Mother did not make such a request to the trial court, and, on appeal, proffers no additional evidence she would have submitted. Similarly, while mother claims the court erred by not conducting a hearing to determine if mother was at fault for failing to update the court with an address, mother raised no such excuse in the trial court and does not

3

proffer any legitimate reason on appeal. Therefore, there are no grounds to disturb the court's conclusion to terminate mother's parental rights.

Next, we turn to father's appeal, which pertains solely to X.L. Father first argues that the court erred in finding changed circumstances in his case. A change in circumstances is most often found when a parent's ability to care for the child has stagnated. In re D.M., 2004 VT 41, ¶ 5, 176 Vt. 639 (mem.). To determine if a parent's progress has stagnated, the court must consider whether the parent's abilities have improved from the time of the CHINS adjudication so that the parent's improved ability substantially conforms to the expectations in the case plan. In re D.C., 168 Vt. 1, 4 (1998). Our review on appeal is limited to determining whether the trial court's factual findings are supported by credible evidence and whether the findings support its conclusions. Id.

Father argues that X.L. was taken into custody because of mother's inability to address X.L.'s failure to thrive and that, therefore, the court should have considered whether father was able to meet X.L.'s basic needs, which he contends he could. See In re D.C., 168 Vt. at 4 (explaining that stagnation is determined by assessing whether there is no reasonable possibility that the causes and conditions which led to the filing of the petition can be remedied within a reasonable time). Father claims the court erred in addressing other "collateral issues" such as his ongoing relationship with a volatile individual and his failure to complete anger management therapy.

We conclude there was no error. While the most immediate cause of X.L.'s custody was mother's failure to properly care for him, the reason father could not parent X.L. at the time was due to father's domestic violence against mother, which was intimately linked to his inability to control his anger. Thus, these issues were incorporated into the case plan; a plan to which father stipulated. The trial court properly considered whether father had progressed in the areas identified in the case plan, and its findings that father had not made progress are supported by the evidence. The question is not whether the parent has shown any improvement in his or her parenting skills, but instead "whether the improvement substantially conformed with the expectations at the time of the CHINS adjudication and with [DCF's] case plan." In re D.B., 161 Vt. 217, 220 (1993). In this regard, father's progress was minimal. Father did not complete anger management, continued a volatile relationship contrary to DCF's instruction, and admitted that he could not properly care for X.L. on his own. See In re A.F., 160 Vt. 175, 181 (1993) (noting that a parent's improvement in one area does not preclude a finding of changed circumstances).

Next, father argues that DCF failed to provide father with services and that stagnation was therefore caused by factors beyond his control. See In re S.R., 157 Vt. 417, 421-22 (1991) (recognizing that that stagnation cannot be based on factors beyond a parent's control). Father contends that his DCF caseworker was negligent in making only two referrals for him and should have referred him for individual counseling, anger management, and a parenting class. We conclude that DCF provided father with sufficient resources and that stagnation was caused by factors within father's control. DCF provided father with supervised visitation and coaching. Father's failure to complete his anger management counseling, to implement the instruction he received during the visits, and to end his volatile relationship were all matters within father's control.

4

Finally, in a related argument, father argues that the court erred in failing to consider in its best-interests analysis DCF's failure to refer father for services. Given our conclusion that DCF provided father with appropriate referrals and support, there was nothing for the court to consider, and we need not address this issue further.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Beth Robinson, Associate Justice

5