*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-418

MARCH TERM, 2012

| | |
|---|---|
| In re S.M. & C.M., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Addison Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 78/79-12-09 Anjv |

Trial Judge: David A. Jenkins

In the above-entitled cause, the Clerk will enter:

Mother appeals from the termination of her residual parental rights in S.M. and C.M. She argues that the court erred by failing to make findings on whether a "reasonable time" by which mother could resume parental duties should be affected by the opportunities for adoption of the children. We affirm.

Mother is the biological parent of C.M., born in September 1999, and S.M., born in December 2007. The Department for Children and Families (DCF) became involved with the family in early 2009 after receiving reports that mother's substance use was affecting her children's safety and well-being. Mother was reluctant to engage in the services and supports that DCF offered. She admitted using Oxycontin, Percocet, Zoloft, Valium, Topamax, Ambien, and other substances. Mother was also in a relationship with a known heroin user. DCF also had concerns about mother's mental health based on her erratic behavior during interviews and at her children's daycare. By December 2009, all efforts to engage mother in counseling and other services were unsuccessful. In January 2010, the court granted DCF conditional custody of the children, and the children were later determined to be children in need of care or supervision (CHINS). In April 2010, mother gave birth to another child. Mother had smoked and used drugs while pregnant. The infant required intensive care and was taken into DCF custody. Mother nevertheless continued to resist services and abuse opiates. Following a June 2010 disposition hearing, S.M. and C.M. were placed in foster homes. In January 2011, DCF moved to terminate mother's residual parental rights. After a hearing, the court granted its request.

The court made numerous findings, none of which are challenged on appeal. It found that mother failed to comply with DCF's case plan. She continued to abuse substances, and she refused to engage in substance abuse treatment or mental health treatment. She continued to date a heroin user. She was not meeting the needs of the children. Mother acted unpredictably during visitation with the children. She appeared impaired at times, she discussed inappropriate topics with the children, and she often would talk on her cell phone during visits. Mother did not accept feedback after visits.

Dr. William Nash conducted a psychological evaluation of mother in September 2010. Dr. Nash noted that mother's life was very unstable and that her emotional state was extremely volatile. Mother showed very little insight into her condition. Dr. Nash found that mother had

marginally adequate parenting skills for small children and minimal skill with children ten years and older. She had very little insight into children's developmental needs, and she lacked empathetic understanding. Dr. Nash concluded that due to mother's drug addiction and resistance to treatment for substance abuse and mental health issues, she could not adequately care for any child, let alone children with special needs like C.M. and S.M. Dr. Nash also opined that placing the children with mother would cause them considerable harm.

With respect to the children, the court found that C.M. was doing well in his foster placement. He was making progress in school and building relationships with his foster family. The court found that C.M. needed permanency in his life. He needed to live in a home where his educational and emotional needs were recognized and consistently met. His foster family was committed to continuing to meet his needs and to adopting him.

As to S.M., the court found that she had suffered significant trauma and she had been diagnosed with PTSD and Adjustment Disorder with mixed anxiety. When S.M. came into custody, she engaged in self-harming, excessive masturbation, dysregulated sleep, and eating inappropriate things. She would sometimes smear or eat her feces. These behaviors continued after S.M. came into foster care, and they worsened after visits with mother. S.M. would become so upset after visiting with mother that she would make herself vomit, pull her hair out, masturbate, throw tantrums, and smear her feces on objects. At the request of the children's attorney, the court suspended visitation with mother as of March 2011 following a contested hearing. Throughout this period, mother continued to abuse drugs. She did not keep in consistent contact with her caseworker nor did she inquire regularly about the well-being of the children.

The court found that while some of S.M.'s troubling behaviors had lessened, she still had many problems that affected her mental health. S.M. needed counseling and consistency of care, and she needed to be in a home where her challenging needs could be met. While S.M. was not currently in a pre-adoptive home, the court found that she needed specialized care to meet her ever-growing needs for consistency and stability in a loving home. Her permanency needs required her to be in a predictable and structured home with skilled caretakers. The court found that mother could not provide such a home environment to S.M. now or in the foreseeable future due to her unaddressed substance abuse, emotional instability, and mental health problems.

Based on these and numerous other findings, the court concluded that mother had stagnated in her ability to parent and that termination of her rights was in the children's best interests. This appeal followed.

Mother argues that the court erred by failing to make findings as to whether the children could or would be adopted in the foreseeable future. She asserts that "the nonexistence of pre-adoptive placements for the children has a bearing" on what a reasonable time would be for her to improve her parenting ability.

The court was not required to make the findings suggested by mother. See In re D.M., 162 Vt. 33, 40 (1994) ("Our law is clear . . . that a valid termination of parental rights does not depend on the availability of permanent foster care or adoption."). The question before the court was whether mother had stagnated in her ability to parent the children and whether termination of mother's rights was in the children's best interests. See, e.g., In re B.W., 162 Vt. 287, 291 (1994). To determine a child's best interests, the court must consider four statutory factors. See 33 V.S.A. § 5114. The most important factor is the likelihood that the natural parent will be able to resume his or her parental duties within a reasonable period of time. In re B.M., 165 Vt. 331,

336 (1996); see also In re B.S., 166 Vt. 345, 353 (1997) (explaining that reasonableness of time period for resuming parental responsibilities "must be viewed from the perspective of the needs of the child"). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. See In re G.S., 153 Vt. 651, 652 (1990) (mem.).

The court applied the appropriate standard here, and its decision is well supported by the record. As set forth above, the court found that the children needed placement in a predictable and structured home with skilled caretakers. Mother was in no position to provide such an environment for S.M., nor was she in a position to meet C.M.'s permanency needs now or in the reasonably foreseeable future. Indeed, we note that mother's visitation with the children had been suspended prior to the termination hearing because of the trauma that it caused the children. Following this suspension, mother did not regularly inquire about the well-being of the children. At the time of the termination hearing, mother continued to abuse substances, and she was emotionally dysregulated. The evidence amply shows that mother lacked the stability necessary to parent the children. Certainly, the court was not obligated to continue waiting for mother to improve, as mother suggests, until the children's placements were finalized. See In re D.M., 162 Vt. at 40 (rejecting mother's argument that she should be given the chance to pursue reunification with the children until an alternative, permanent placement arose). There can be no question that a reasonable period of time had passed, from the children's perspective, without any improvement in mother's parenting skills, and the court did not err in concluding that termination of mother's rights was in the children's best interests. See id. (recognizing in case where placement goal was long-term foster care and eventual adoption, that child's best interest required permanency and stability, and that this was possible only through severance of remaining legal bonds between child and her parents).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

3