*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

<u>**ENTRY ORDER**</u>

SUPREME COURT DOCKET NO. 2012-010

APRIL TERM, 2012

In re B.H., Juvenile         }     APPEALED FROM:
                      }
                      }     Superior Court, Addison Unit,
                      }     Family Division
                      }
                      }
                      }     DOCKET NO. 21-3-11 Anjv

                           Trial Judge: Helen M. Toor

In the above-entitled cause, the Clerk will enter:

Mother and father appeal termination of their parental rights to their son B.H., born in March 2011. On appeal, parents argue that the court abused its discretion in terminating parental rights even though the court recognized that the resulting separation could cause trauma to B.H. Father also argues that the evidence and findings do not support the court's conclusion that father will not be able to parent within a reasonable period of time. We affirm.

B.H., who is mother's seventh child and father's fifth child, was taken into the custody of the Department for Children and Families (DCF) and placed in foster care at birth based on parents' history with their other children. All of mother's children have been adjudicated children in need of care or supervision (CHINS) at some point, and parental rights to four of mother's children, including three with father, were ultimately terminated. Two older children have since been returned to mother and father.

The issues leading to the CHINS and termination proceedings with parents' other children were various. They included unexplained skull, rib, and leg fractures to two young children for which parents had not sought medical treatment, mother's significant mental health issues, her inadequate parenting and failure to bond with her children, domestic violence between parents, father's depression, and parents' failure to engage in services and commit to therapy and counseling. More specifically, mother has been diagnosed with adjustment disorder, post-traumatic stress disorder, and a personality disorder. She exhibits extreme anxiety and controlling behavior. The parties have had an erratic, unstable, and violent relationship in the past. Father defers to mother and is controlled by her. Father has chronic and longstanding depression, and has had suicidal ideation, including as recently as a month before the termination hearing in this case.

The parents admitted B.H. was CHINS in April 2011 and the initial disposition recommended termination of parental rights. A two-day disposition hearing was held in December 2011. Witnesses included parents, mother's therapist, B.H.'s foster mother, two DCF

case workers, a parent educator and visit supervisor, and two psychologists. One psychologist performed a forensic evaluation of both parents and presented testimony on behalf of DCF. The expert concluded that while parents are making progress, they "both still have a marginal ability to parent a young child." The expert explained that mother's therapy is a good first step, but has not yet addressed her personality or post-traumatic stress disorders. Thus, the expert thought mother needed three to five years to fully confront and address her problems. The other psychologist presented expert testimony on mother's behalf. He agreed that mother needs continued specialized therapy, but believed she could achieve success in a shorter period of time. He acknowledged that the parents are not now ready to parent B.H., and recommended giving parents another six months to demonstrate improvement.

In January 2012, the court granted the termination petition. The court commended both parents for making progress in their parenting skills, and for developing a positive bond with B.H. The court also credited mother with engaging in individual counseling services and beginning to address her issues, but the court noted that her therapy had not yet begun to address issues about her own childhood or the injuries to her other children. Similarly, the court credited father for seeing a therapist, but found that process was just beginning.

In assessing the best-interests factors, the court concluded that B.H. has a healthy attachment to his foster family with whom B.H. has been living since birth. He is healthy and happy and has connections to foster grandparents and his foster siblings, including his biological sister who was previously adopted by B.H.'s foster parents. The court was unable, however, to determine to whom B.H. is primarily attached given his young age. The court found that "removing an infant from the home in which he has lived his whole short life creates great risk of breaking an attachment at a crucial time in the child's development [and] . . . can create a personality disorder in a child." The court found that B.H. also has a relationship with his biological parents and it will be detrimental to B.H. to lose that connection. Nonetheless, the court concluded that B.H. requires finality and parents will not be able to assume parental duties within a reasonable period of time. The court rejected the notion that mother will be ready to parent in six months, finding that it will take "an effort of years" for mother to address her personality disorder and PTSD. Similarly, the court concluded that father had only just begun to obtain therapy for his chronic depression and suicidal ideation. The court concluded that neither parent could provide a safe and supportive environment for B.H. or provide the necessary support for B.H. following the trauma of separating him from the only family he has ever known. Thus, the court concluded that termination was in B.H.'s best interests.

Both parents appeal. Mother argues that the court abused its discretion in terminating parental rights knowing that this could cause B.H. trauma. Father joins mother's argument and additionally contends that the evidence does not support the court's conclusion that father will not be able to resume parenting within a reasonable period of time.

The family court may terminate parental rights at the initial disposition proceeding if the court finds by clear and convincing evidence that termination is in the child's best interests. In re J.T., 166 Vt. 173, 177, 179 (1997). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). The reasonableness of the time period must be measured from the child's

perspective, In re B.M., 165 Vt. 331, 337 (1996), and may take account of the child's young age or special needs, In re J.S., 168 Vt. 572, 574 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. In re A.F., 160 Vt. 175, 178 (1993).

We first address mother's argument that the court placed B.H. at substantial risk of psychological harm by terminating parental rights and thus abused its discretion. Mother's argument focuses on the court's finding that B.H.

> will likely suffer some trauma by losing the connection to [father] and [mother], just as he would if he were to lose the connection to his foster family. However, to survive this challenge [B.H.] will need highly skilled, emotionally stable and empathetic adults to care for him due to the attachment issues of a change in custody at his age. These parents are just not in that category.

In a footnote, the court further explained that any harm to B.H. from losing his biological parents could be minimized if B.H.'s foster family is willing to continue a relationship with parents to ease the transition. Mother argues that the court's termination in light of the recognized chance of trauma to B.H. is akin to child abuse and an abuse of discretion because there is no evidence or finding that foster parents are highly skilled, emotionally stable, and empathetic adults. Further, mother contends that there is no assurance that B.H. will be adopted by these foster parents or that the foster parents will continue a relationship with B.H.'s biological parents to ease the transition for B.H.

We conclude that there was no error. As an initial matter, we disagree with mother's interpretation of the court's decision that B.H. will need highly skilled adults to support him in losing his biological parents. We read the court's order as stating that such support will be required if there is a change in custody—that is, if B.H. is removed from his foster family. As the court explained elsewhere in its decision, if B.H. were "remov[ed] from the home in which he has lived his whole short life" then "the child would require a highly skilled adult with great empathy to avoid severe trauma to the child." The court was not persuaded that mother and father have such skills. Although the court certainly also recognized that some trauma may result if B.H. loses his connection to his biological parents, this was not the same as the challenge B.H. would face by losing the only home the child has ever known.[*]

---

[*] We are not persuaded by mother's contention that the court's decision is faulty because the court cannot ensure that B.H. will remain with, or be adopted by, his foster family, and thus that B.H. will have the necessary support to endure the loss of his relationship to his biological parents. Although we do note that foster parents have expressed their intent to adopt B.H., the decision to terminate parents' rights was not contingent on this fact, and there is nothing in the statutory best-interests criteria that requires consideration of the particular permanency plan contemplated for the child, or the likelihood of adoption. See In re S.B., 174 Vt. 427, 430 (2002) (mem.) ("[W]e have repeatedly stated 'that a valid termination of parental rights does not depend on the availability of permanent foster care or adoption.'" (quoting In re D.M., 162 Vt. 33, 40 (1994)). As we explained in In re S.B., 174 Vt. at 428, a termination proceeding "is not a custody case" in which the family court must balance the respective advantages of different

In any event, even accepting mother's articulation of the court's decision, the effect of losing the parent-child relationship is not the sole determinant for termination; rather, the court must weigh the quality of the parent-child relationship and the role the parent plays in the child's life in the context of all the statutory best-interests factors. See 33 V.S.A. § 5114(a) (listing statutory factors). In this analysis, the court's findings on the most important statutory factor—whether the parents will be able to assume their parental responsibilities within a reasonable period of time—are particularly relevant. The court explained that mother was not ready to parent and would not be able to do so even within six months given the extent of therapy required to address her mental health issues. The court concluded that this was too long for B.H., explaining "[f]or an infant who has spent his whole life in the foster home, any more time in limbo would be too much time." Thus, the court fully recognized the existence of a parent-child relationship and the potential emotional trauma of severing it, but concluded that B.H.'s strong need for stability and the parents' demonstrated inability to resume parental responsibilities outweighed that concern. See In re M.B., 162 Vt. 229, 238 (1994) ("Public policy . . . does not dictate that the parent-child bond be maintained regardless of the cost to the child."). The court properly exercised its discretion in reaching this decision, and we discern no basis to disturb it.

Finally, we consider father's argument that the evidence "failed to establish that father would not be able to resume his parental duties within a reasonable period of time." Father points to the following evidence to show that he will soon be ready to parent B.H.: he and mother have been caring for two older boys; he has created a bond with B.H.; his parenting skills are improving; and he is engaged in therapy. Notwithstanding these positive steps forward, credible evidence supports the court's decision that father will not be ready to parent in a reasonable period of time. See In re A.W., 167 Vt. 601, 603 (1998) (mem.) (findings supported by clear and convincing evidence will be upheld). Father has chronic depression and suicidal ideation for which his therapy is just beginning. In addition, father's readiness to parent cannot be separated from mother's and the status of their relationship since father desires to co-parent with mother. As explained above, mother needs years of therapy to address her mental health and parenting issues, and the parties need to continue working on their relationship, which has been tense and violent. The child's young age and the evidence of father's inability to parent the child presently, and the unlikelihood he could do so in the near future, support the court's conclusion that termination was in B.H.'s best interests. See In re A.F., 160 Vt. at 178 (conclusions of law will be upheld if findings support them).

We note in closing that the trial court found that both parents have struggled as a result of their own childhood traumas that have taken a toll on their ability to be parents up until now. Although we affirm the trial court's conclusion that despite their progress they will not be

placement options, but rather "a legislatively created . . . proceeding in which the court is required to weigh specified statutory factors when determining whether to grant a petition for termination of residual parental rights." The family court duly weighed these factors here and determined by clear and convincing evidence that mother could not assume parental responsibilities within a reasonable time, and that the balance of factors compelled a termination of parental rights. We find nothing lacking in that analysis. Certainly, it will aid B.H. to have the comfort and support of the family he has lived with since birth following termination, but the court's overriding concern was to provide B.H. with needed finality.

able to resume parental duties within a reasonable time period for this child, we also affirm the trial court's commendation of both parents for their progress to date, and their willingness to continue working on their issues.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice