VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      25-AP-176

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

NOVEMBER TERM,   2025



| | |
|---|---|
| In re N.H., N.H., N.H., N.H., Juveniles (S.C., Mother*) | APPEALED FROM: |
| | Superior Court, Windham Unit; Family Division |
| | CASE NOS. 23-JV-01244; 23-JV-01245; 23-JV-01246 & 23-JV-01247 Trial Judge: Elizabeth D. Mann |

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her parental rights to minor children Na.H., Ne.H., No.H., and Nal.H.  We affirm.

This case concerns Na.H., born in March 2016; Ne.H., born in March 2017; No.H., born in October 2018; and Nal.H., born in May 2020.  The children's father passed away in 2022.  In September 2023, the State filed petitions alleging that the children were in need of care or supervision (CHINS) based on concerns that mother had left Ne.H., who is autistic and has special needs, and Na.H. in the care of their grandparents without providing any legal permissions for their medical care or education, and that the younger two children had significant unmet medical and dental needs.  The court issued a conditional custody order to mother in October 2023, which was vacated at the State's request after the three younger children's hair tested positive for various drugs including THC, MDMA, suboxone, cocaine, and fentanyl.  The court issued emergency and temporary care orders transferring custody of the children to the Department for Children and Families (DCF).

In November 2023, mother stipulated to the merits of the CHINS petition.  In the stipulation, she admitted that: the children had been exposed to illicit substances and regulated drugs while in her care; she did not have proper housing for the children; the older children's school attendance was inconsistent, which was detrimental to them; and the children were behind on their medical and dental appointments.  She further admitted that she had not complied with the conditional custody order.

At disposition, the court established a permanency goal of reunification with mother. The disposition case plan contained the following expectations for mother: obtain safe and stable housing by September 2024; complete mental-health and substance-use assessments by January

2024 and follow treatment recommendations; complete urinalyses when requested by DCF; maintain a sober lifestyle; ensure the children attended all medical, dental, and therapeutic appointments; attend all scheduled visits with the children; complete a parenting class; attend all educational meetings; cooperate with DCF; and refrain from criminal activity.

DCF filed petitions to terminate mother's residual parental rights in September 2024. The family division held a hearing over four days in March and April 2025, following which it issued a written order containing the following findings.

Mother never progressed beyond supervised contact with the children. DCF regularly provided mother with a written list of upcoming appointments and visits and reminded mother of these events by phone. However, mother attended only sixty-eight of 106 visits with the children and was late for sixteen of the visits she attended. She attended twenty-five out of thirty-four scheduled one-on-one visits with the children. She attended almost no medical or dental appointments for the children, and missed most of their therapeutic appointments, educational meetings, and other events including court hearings, team meetings, and case plan reviews. She frequently missed meetings with DCF and only performed five out of twenty-three scheduled urinalyses. Mother completed online and in-person parenting classes, but her testimony indicated that she had not truly learned about her children's developmental needs or how to engage with the children and their providers to meet those needs.

Mother engaged in a mental-health assessment with a therapist, who concluded based on mother's self-reported status that mother did not need further treatment for mental health or substance use. However, mother subsequently participated in a family forensic evaluation with a forensic psychologist who recommended that mother engage in dialectical behavioral therapy or another cognitive behavioral protocol. He also recommended urinalyses due to a suspected substance-use disorder. Mother reported that she was unable to find a therapist to conduct dialectical behavioral therapy. She began a substance-use assessment but did not complete it. The court found that mother had not established mental stability or sobriety based on her testimony that she had recently increased her alcohol consumption and was more depressed than she had ever been.

Mother lacked stable housing until just before the termination hearing, when she signed a lease for a two-bedroom apartment. However, the unit was not sufficient for mother and the four children. By the final hearing, mother had obtained a car and a family housing voucher to pay rent and utilities for her apartment. She started working for a local ski resort in late 2024 but was terminated from her position in early 2025.

Mother did not incur any new criminal charges, and her pending charges were resolved in August 2024 when she entered a guilty plea. She remained on probation because she had not yet completed the required community service. She stopped communicating with the probation office for a time but resumed contact just before the termination hearing.

At the beginning of the CHINS proceeding, the oldest child, Na.H., was seven years old but developmentally delayed. She regularly experienced nightmares, was thought to have a possible learning disability due to her poor performance at school, and displayed inappropriate sexual behavior. Ne.H., who is autistic, had rarely attended school and was barely verbal. No.H. and the youngest child, Nal.H., had developmental and behavioral issues, and each of the three youngest had significant unmet dental needs.

The children had each been placed with different relatives, who had ensured that their developmental, medical, dental, and educational needs were met. Ne.H. had an individualized education plan, and his foster family provided routine and consistency, which were critical for him. No.H. continued to have behavioral issues and needed extra supports in school. Nal.H. required speech and language therapy. The children were well-adjusted to their foster homes, and each of the foster placements was willing to adopt the child in their care.

The court found that mother had stagnated in her progress toward reunification. Although she had not engaged in further criminal activity and recently obtained stable housing, she had not pursued recommended mental-health treatment or completed a substance-use assessment, which were areas of serious concern given her prior history. She was inconsistent in attending visits with the children and never progressed beyond supervised visits. She also failed to attend medical, dental, and educational appointments for the children, and her testimony demonstrated a minimal understanding of their needs.

The court then assessed the best-interests factors set forth in 33 V.S.A. § 5114(a). It found that mother would not be able to resume parenting the children within a reasonable time because she had not provided care for them for two years and had not fully achieved any of the case plan goals. It found that she did not play a constructive role in their life because she failed to consistently attend visits or demonstrate an ability to meet their educational, medical, or dental needs. The court found that the children had a limited relationship with mother. In contrast, they had loving connections with their foster families, who provided them with the care they needed, and were well-adjusted to their respective schools and communities. The court therefore concluded that termination of mother's residual parental rights was in the children's best interests. This appeal followed.

When considering a petition to terminate parental rights after initial disposition, the family court must first determine whether there has been a change in circumstances sufficient to justify modification of the original disposition order. In re B.W., 162 Vt. 287, 291 (1994). "A change in circumstances is most often found when the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." In re H.A., 153 Vt. 504, 515 (1990). If it finds a change in circumstances, the court must then consider whether termination is in the child's best interests in accordance with the factors set forth in 33 V.S.A. § 5114(a). "The most important factor for the court to consider is the likelihood that the parent will be able to resume parental duties within a reasonable time." In re J.B., 167 Vt. 637, 639 (1998) (mem.). "As long as the court applied the proper standard, we will not disturb its findings unless they are clearly erroneous, and we will affirm its conclusions if they are supported by the findings." In re N.L., 2019 VT 10, ¶ 9, 209 Vt. 450 (quotation omitted).

Mother first argues that the court erred in finding that she had stagnated in her ability to care for the children. "The key question for the court when considering whether stagnation has occurred is whether the parent has made progress in ameliorating the conditions that led to state intervention." In re D.M., 2004 VT 41, ¶ 7, 176 Vt. 639 (mem.). Stagnation may be "found in cases in which parenting skills improve, yet the improvement is so insignificant that it is unlikely the parent will be able to resume parental duties in a reasonable time." In re D.M., 162 Vt. 33, 38 (1994).

The court's finding of stagnation here is not clearly erroneous. The court found that mother failed to make significant progress in several critical areas identified in the case plan: she failed to consistently visit the children, did not engage with their medical, dental, or educational

3

providers, demonstrated a minimal understanding of the children's needs and how to meet them, and failed to fully address her mental-health or substance-use issues. The record supports the court's findings and its determination that she had stagnated in her progress toward reunification. See In re K.G., 2023 VT 51, ¶ 32, 218 Vt. 419 (holding court's findings that mother missed almost half of visits, never progressed beyond supervised visitation, failed to consistently engage in mental-health treatment, and did not cooperate with service providers were sufficient to support finding of stagnation). While mother argues that a finding of stagnation was inappropriate given her recent achievements, we have long held that "the mere fact that a parent has shown some progress in some aspects of his or her life does not preclude a finding of changed circumstances warranting modification of a previous disposition order." In re A.F., 160 Vt. 175, 181 (1993).

Mother further argues that the evidence does not support certain specific findings made by the court in its stagnation analysis. First, she contends that she achieved the action step requiring her to refrain from criminal behavior but was treated as if she had failed because she had not yet completed probation. Mother mischaracterizes the court's findings on this topic. The court acknowledged that mother had resolved her pending criminal charges and had not incurred new ones but found that mother "remains at criminal risk due to the open status of her probation and recent failure to maintain contact with her probation officer which could have resulted in a violation filing." The court was clearly concerned that mother's recent behavior rendered her progress on this aspect of the case plan more precarious. This finding is supported by the evidence and is not clearly erroneous.

Mother further argues that the evidence shows she complied with the action step requiring her to provide safe and stable housing. The record and the court's findings do not support this assertion. The case plan required mother to provide safe and stable housing for her children by September 2024. She did not acquire housing until just before the last day of hearing in April 2025, and even then, it was not sufficient to accommodate her four children. There was no error in the court's conclusion regarding this action step. The court's observations that mother had not indicated how she planned to use the residence to expand contact or transition to overnight visits were not "secret" requirements, as mother contends. Rather, they reflected the court's conclusion that mother's new home did not appear to allow her to care for the children on a full-time basis.

Mother next argues that the evidence contradicted the court's finding that she had not demonstrated sobriety, pointing to the testimony of her counselor that substance use did not appear to be a problem for mother. The finding is not clearly erroneous. Mother described herself as an alcoholic, admitted heavy prior use of marijuana, and testified that she had begun drinking again because she was "more depressed than, you know, any other time I could think of." The forensic psychologist who examined mother opined that a substance-use disorder was the best explanation for mother's behavior, despite her denial that she had a problem with substances. Mother did not complete a substance-use assessment and refused most of the urinalyses requested by DCF. This evidence supports the court's finding that mother had not demonstrated sobriety. See Gilbert v. Davis, 144 Vt. 459, 461 (1984) ("The ruling of the court must stand if supported by credible evidence, even though there may be inconsistencies or substantial evidence to the contrary.").

Finally, mother argues that it was unfair to fault her for not providing care for the children since October 2023, because she had no control over who provided care for them. "While stagnation caused by factors beyond [a parent's] control could not support termination of

parental rights," such is not the case here. In re S.R., 157 Vt. 417, 421-22 (1991). Mother missed more than a third of her visits with the children and was late to many others. Mother also failed to attend visits with the children's medical, dental, or educational providers. As the court found, mother's inability to consistently attend visits or engage with the children's providers impeded the expansion of contact, meaning that she never progressed to having unsupervised visits where she could demonstrate an ability to meet their needs. Mother's poor attendance was a matter within her control.

Mother also challenges the court's conclusion that she would not be able to resume parenting within a reasonable time. First, she claims that the court improperly shifted the burden to her to prove that she was a fit parent when it found no evidence that mother had a safe and stable home where the children could thrive given their heightened needs or that she could meet the case plan goals within a reasonable time. She argues that the court improperly faulted her for the lack of evidence on these points when it was the State's burden to present such evidence.

Mother mischaracterizes the court's decision. By observing the lack of evidence of a safe and stable home or that mother could achieve the case plan goals within a reasonable time, the court was describing the record before it, not shifting the burden to mother to prove that she was a fit parent. See In re B.C., 169 Vt. 1, 14 (1999), overruled in part on other grounds by In re C.P., 2012 VT 100, ¶ 24, 193 Vt. 29 ("In noting the absence of any credible evidence that grandmother could assume the role of parent, the court was merely commenting on the state of the evidence, not signaling that it was grandmother's burden to prove her fitness."). As the court found, while mother had recently obtained an apartment, her housing case manager testified that it was insufficient for the children. And, as described above, mother failed to make progress in critical areas including visitation, meeting the children's medical, dental, and education needs, and addressing her mental-health and substance-use issues during the year since disposition, despite DCF supports. The court could reasonably infer from mother's lack of progress that she would not be able to resume parenting the four children within a reasonable time, particularly where several of them had heightened needs. See In re C.P., 2012 VT 100, ¶ 30 ("The reasonableness of the time period is measured from the perspective of the child's needs, and may take account of the child's young age or special needs." (citation omitted)).

Mother argues that the court failed to identify what would be a reasonable time for her to resume parenting, and that this omission is fatal to its decision. Mother points to no authority to support the notion that the court is required to precisely define a reasonable time for reunification. Nor does the court's failure to do so prevent adequate appellate review. The court's findings regarding mother's lack of progress over the course of the year-and-a-half-long proceeding and the children's young ages and heightened needs were sufficient to support its conclusion regarding this factor. See In re C.L., 2021 VT 66, ¶ 19, 215 Vt. 341 (holding that mother's failure to sufficiently improve ability to care for child during pendency of proceeding supported conclusion that she was unable to resume parenting within reasonable time given young age of child).

Finally, mother argues that the court based its decision on a "novel legal principle" that the best interests of the children are "superior" to her constitutional right to parent her own children. See In re M.W., 2016 VT 28, ¶ 20, 201 Vt. 622 ("[T]he best interest of the child has always been regarded as superior to the right of parental custody." (quotation omitted)). To the extent mother is arguing that the court applied the incorrect legal standard, she is incorrect. Consistent with Vermont law, the court considered the four statutory best-interests factors and determined by clear and convincing evidence that they weighed in favor of terminating mother's

parental rights. See 33 V.S.A. § 5114(a) (providing that "[a]t the time of . . . a petition or request to terminate all residual parental rights of a parent without limitation . . . , the court shall consider the best interests of the child in accordance with" four statutory factors); In re R.W., 2011 VT 124, ¶ 15, 191 Vt. 108 ("[T]he trial court must find stagnation, as well as best interests, by clear and convincing evidence."). To the extent mother is arguing that the statutory scheme violates the Fourteenth Amendment to the U.S. Constitution, she failed to raise this issue below and therefore has not preserved it for our review. In re D.C., 157 Vt. 659, 660 (1991) (mem.) ("Issues, including those with constitutional dimensions, are waived by parties unless raised at the earliest opportunity.").

Affirmed.

BY THE COURT:


_____
Harold E. Eaton, Jr., Associate Justice


_____
William D. Cohen, Associate Justice


_____
Nancy J. Waples, Associate Justice

6