VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     22-AP-276



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

APRIL TERM,   2023

In re G.W., Juvenile      } APPEALED FROM:
(A.D. Father\* & E.W. Mother\*)   }
            } Superior Court, Rutland Unit,
            ] Family Division
            } CASE NO. 120-6-18 Rdjv
              Trial Judge: Howard A. Kalfus

In the above-entitled cause, the Clerk will enter:

Mother and father both appeal the family division's order terminating their parental rights to their son G.W., born in December 2015.  On appeal, mother argues that the family division failed to account for the loss of contact with mother resulting from terminating mother's parental rights.  Father argues that the evidence does not support the findings that father's progress had stagnated.  We affirm.

The family division made the following findings.  In June 2018, the family division granted custody of G.W. to the Department for Children and Families (DCF) on an emergency basis.  The State subsequently filed a petition alleging that G.W. was a child in need of care or supervision (CHINS).  DCF placed G.W. with his paternal grandmother and her partner.  In August 2018, mother stipulated that G.W. was CHINS due to risk of harm from mother's substance abuse and failure to engage with DCF.  At the time, mother was living alone and was the sole caretaker of G.W.  The court issued an initial disposition order in November 2018, which had a goal of reunification.  The action steps for mother included seeking substance-abuse treatment, establishing consistent contact with DCF, engaging in a mental-health evaluation and following recommendations, attending and engaging in Family Time, and meeting with a domestic-violence specialist.  The goals for father included seeking and completing an anger-management assessment and following recommendations, attending and engaging in Family Time, following conditions of release, and meeting with a domestic-violence specialist.

In April 2020, DCF changed the case-plan goal to adoption, but following an administrative review, it was changed back to reunification to allow father to obtain domestic-violence counseling.  In December 2020, the court adopted a permanency plan that updated parents' action steps to require parents to engage in treatments and Family Time, and to obtain housing.  In the spring of 2021, DCF suspended father's parent-child contact after father became explosive with his mother, G.W.'s foster mother, and her partner in G.W.'s presence.  Father filed a motion for parent-child contact, which the State opposed.  The family division granted the

State's request for a temporary protective order, prohibiting father from having contact with foster parents. The order was extended several times and, in granting a final order in May 2021, the family division made findings regarding father's behavior. The family division found that father had confronted his mother aggressively and loudly and called her various profane names. He yelled threats at his mother's partner and pushed his chest against the partner's chest. G.W. was present and asked father to stop and go home. Father's angry outbursts made G.W. sad. Father was subsequently verbally aggressive and hostile at a DCF meeting. These events took place after father had completed twenty-six weeks of domestic-violence treatment and an anger-management program. The court determined that father's behavior was detrimental and harmful to G.W. The resulting protective order restricted father to supervised contact as approved by DCF.

In April 2021, DCF changed the case-plan goal to adoption based on parents' lack of progress toward completing their goals. The State filed a petition to terminate mother's and father's parental rights in May 2021. Following a three-day hearing, the court terminated parents' parental rights. The court found that there was a change in circumstances due to stagnation. Father had not seen G.W. in over a year and had not kept informed regarding G.W.'s medical and educational needs. Although father had engaged in services and obtained housing, his inability to control his anger prevented him from safely parenting G.W. Similarly, the court found that mother's progress had stagnated. Mother did not adequately engage in mental-health or substance-abuse treatment. She acknowledged using heroin only a week before the hearing. She failed to sign releases or to meet with a domestic-violence specialist. Although she attended weekly supervised visits with G.W., she did not progress to unsupervised time. The court concluded that termination was in G.W.'s best interests. G.W. has resided with his paternal grandmother and her partner since entering DCF custody in June 2018. He had a positive relationship with them and his uncle, who also lives in the home. He was well adjusted to his current school and community. Neither parent was able to resume parenting in a reasonable period of time. Father needed to reacquaint himself with G.W. and learn how to meet G.W.'s needs. Mother's lack of treatment and ongoing struggles with mental health and substance use remained obstacles to parenting. Therefore, the court granted the petition to terminate. Both parents appeal.

On appeal, mother first argues that the family division needlessly terminated her parental rights because G.W. was safely living with his grandparents and having ongoing positive contact with mother. When the termination of parental rights is sought after initial disposition, the trial court must conduct a two-step analysis. In re B.W., 162 Vt. 287, 291 (1994). "The court must first find that there has been a change in circumstances; second, the court must find that termination of parental rights is in the child's best interests." In re S.W., 2003 VT 90, ¶ 4, 176 Vt. 517 (mem.); see also 33 V.S.A. § 5113(b). In assessing the child's best interests, the family division is guided by the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639 (1998) (mem.).

Mother claims that termination was unnecessary and not in G.W.'s interest because termination will result in the loss of G.W.'s relationship with his mother and the family division found that her weekly visits with G.W. were positive. There is no basis to disturb the judgment of the family division, which applied the correct legal standards and made findings and conclusions supported by the evidence. The family division assessed the statutory criteria in § 5114, finding that G.W. sees mother weekly and is excited to see her, but also that G.W. has a positive relationship with his foster family and is well adjusted to his home, school, and

community. Most importantly, the court found that mother would not be able to resume parenting within a reasonable time given her inability to make progress on addressing her substance use and mental health.

Mother's argument essentially asks this Court to reweigh the best-interests factors. In re S.B., 174 Vt. 427, 429 (2002) (mem.) (explaining that Court's role on appeal "is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion"). The family division acted well within its discretion in determining that although visits with mother were positive, on balance, termination was in G.W.'s best interests. See In re M.B., 162 Vt. 229, 238 (1994) (recognizing that public policy does not require maintaining parent-child bond regardless of cost to child).

On appeal, father argues that the evidence does not support the court's finding that his progress had stagnated because he alleges that he made progress on several case-plan goals, including resolving his criminal charges, engaging in Family Time coaching, attending supervised visits, completing an anger-management assessment and a domestic-abuse program, and obtaining housing.

The family division did not abuse its discretion in finding that father's progress stagnated. See In re D.M., 2004 VT 41, ¶ 5, 176 Vt. 639 (mem.) (recognizing family division's "broad discretion" in determining whether to terminate parental rights). As explained above, to modify an existing disposition order, the family division must find that there is a change of circumstances. 33 V.S.A. § 5113(b). This is commonly demonstrated through parental stagnation, which occurs when "the parent has not made the progress expected in the plan of services for the family despite the passage of time." In re D.M., 2004 VT 41, ¶ 5. The family division credited father with engaging in programming, completing a parenting class, and obtaining stable and appropriate housing. The court found that nonetheless, father failed to demonstrate changed behavior. For example, father completed an anger-management course but subsequently engaged in aggressive and confrontational behavior that resulted in the juvenile-protection order. The court also found that father's progress had stagnated because he not seen G.W. in over a year and had not remained informed about G.W.'s school or medical situation. Completing programs is not the sole determinant of whether a parent's progress has stagnated. "[T]he main concern must always be whether the individual parent has demonstrated the improvement contemplated at the time the children were removed from the parent's care." Id. ¶ 7. Here, the court acted within its discretion in determining that, despite making progress on some of the case-plan goals, father's progress had stagnated because there was minimal improvement in his parenting capacity.

Father next argues that the family division abused its discretion in assessing G.W.'s best interests. Father claims that the court's analysis was flawed because it relied in large part on his lack of relationship with G.W., which he contends was not his fault. Father asserts that after the protective order expired, DCF imposed so many conditions on his contact that father could not comply and therefore his lack of connection was a result of DCF's refusal of contact and not attributable to father.

The family division acted within its discretion in evaluating G.W.'s best interests. Contrary to father's assertion, the court considered all of the factors in § 5114, including G.W.'s relationship with father and others, G.W.'s adjustment to his home, father's bond with G.W., and father's ability to parent in a reasonable time. Among other things, the court found that G.W. had a strong bond with his foster family and was well adjusted to his current home and

3

community, father had not seen G.W. in over a year, father had not kept informed of G.W.'s medical and education needs, father had not played a constructive role in G.W.'s life, and father was not able to parent within a reasonable time.

To the extent father asserts that DCF was to blame for his lack of contact and connection to G.W., the record supports that this lack of connection was due to father's own conduct. Because of father's actions towards G.W.'s foster parents in G.W.'s presence, a protective order was issued. Moreover, because of father's behavior, the court limited father to supervised visits at DCF's discretion. These visits were implemented through a community organization. The record reflects that father did attend some telephone visits, but declined the offer of video visits, missed the one scheduled in-person visit, and then in December 2021 terminated services. Father asserts that the visits were difficult to comply with because they were not offered outside of working hours. However, father fails to show how he preserved this argument for appeal by raising this issue below. In sum, the record shows that visits were curtailed and supervised because of father's own behavior and then father did not take advantage of the supervised visits offered to him. Based on this record, the family division did not abuse its discretion in considering father's lack of visits and connection to G.W. in evaluating the best interests of G.W.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
William D. Cohen, Associate Justice