2004 VT 41

**In re D.M. and T.P., Juveniles**

[852 A.2d 588]

No. 03-452

¶ 1. April 28, 2004. Mother appeals the termination of her parental rights in her two sons, D.M. and T.P., now almost three and six-years old respectively. Mother argues that the court's finding of changed circumstances due to stagnation did not consider factors beyond mother's control. Mother also argues that termination was improper in light of the loving bond she shares with the children. We affirm.

¶ 2. In May 2002, the Department of Social and Rehabilitation Services (SRS) received information that T.P. had reported, to his daycare provider, that his uncle Chris had been sexually abusing him. At the time, mother and the children were living with her mother, stepfather, and her brother Chris. SRS's investigation revealed that more than one member of mother's family had a history of sexual abuse. Chris is a substantiated sex offender having molested two young children, including a four-year-old boy. Mother's stepfather sexually abused mother's sister, who in turn sexually abused Chris. Mother's other brother,

Gerald, is a convicted sex offender. Mother's then boyfriend, who is D.M.'s father and who was living in the house at the time as well, was also convicted of a sex offense after impregnating a fourteen-year-old girl when he was twenty-one years old. Concerned that the children were at risk of further abuse, particularly in light of mother's living situation, SRS sought custody of both T.P. and D.M. The juvenile court adjudicated the children in need of care and supervision in June and granted custody to SRS.

¶ 3. The plan of services developed for mother required numerous things, including therapy to help mother understand how the abuse had affected T.P. and how to protect both children. Mother was also required to engage with a parent educator and participate in other programs intended to improve her parenting skills. Mother had difficultly controlling T.P.'s aggressive and out-of-control behaviors, and she had inadequate supervision skills. The court noted that mother had been convicted of cruelty to children sometime in 2000 after leaving two-year-old T.P. alone in the house at 2:00 a.m. so she could buy doughnuts and cigarettes. The plan was also designed to help mother gain independence because she had a history of intimate involvement with abusive and controlling men who presented a risk of harm to herself and to the children.

¶ 4. Although mother complied dutifully with the case plan, she was unable to consistently and meaningfully employ the parenting lessons she was given during the fifteen months the children were in SRS custody. SRS sought termination, which the court granted in a lengthy and detailed order. The court found that mother's progress in addressing the reasons for SRS intervention had stagnated. It found mother lacked the ability to live independently and was consistently unable to utilize the parenting techniques she was taught. She blames her own mother for Chris's sexual abuse

of T.P. because the abuse occurred while she and the children were living at her mother's home. The court found that though mother was finally able to acknowledge that her brother had abused her son,

> [s]he was not, however, able to acknowledge the multi-generational sexual abuse so pervasive in her family. Because of that denial, [mother] was not able to begin a process of understanding the impact the sexual abuse had on [T.P.]; nor is the court persuaded that she has the ability to protect against the very same type of abuse occurring again to either [T.P. or D.M.].

The court concluded that the best interests of both children necessitated that they be freed for adoption. This appeal followed.

¶ 5. The juvenile court has broad discretion when deciding whether to grant SRS's petition to terminate a parent's rights in a child. We will affirm the court's decision if the findings are based on the evidence and support the court's conclusions. *In re A.F.*, 160 Vt. 175, 178, 624 A.2d 867, 869 (1993). When considering a petition to terminate parental rights, the court must first determine whether circumstances in the child's life have changed in a material way. *In re D.B.*, 161 Vt. 217, 219, 635 A.2d 1207, 1209 (1993). The change of circumstances most commonly found in termination cases like this one is parental stagnation. *Id.* Stagnation may be found if the parent has not made the progress expected in the plan of services for the family despite the passage of time. *Id.* Here, mother contests the court's findings and conclusions that her progress stagnated. She argues that the court overlooked the fact that her therapy was suspended for several months because her therapist became ill. Mother contends that her stag-

nation was, therefore, beyond her control and it was error for the court to fault her for it.

¶ 6. In the case of *In re S.R.*, 157 Vt. 417, 599 A.2d 364 (1991), we noted that "stagnation caused by factors beyond the parents' control could not support termination of parental rights." *Id.* at 421-22, 599 A.2d at 367. In that case, we rejected the parents' argument that SRS caused the stagnation where the findings and evidence showed that the parents refused to participate in certain aspects of the case plan. *Id.* The circumstances of this case, while different from those in *In re S.R.*, also support the court's stagnation determination. Therapy was one of the many services intended to help mother address the issues identified in the case plan, particularly the need for mother to protect her children from abuse. Thus, therapy was just one tool available to mother to help her meet the bottom-line expectation of the plan. Changing her own behavior and implementing the many parenting lessons she received from other service providers was and remains fully within mother's control. That she was unable to engage in therapy for a period of time with a particular therapist because of circumstances that were admittedly out of her control is, ultimately, irrelevant to whether she made progress in improving her parenting skills.

¶ 7. That mother followed the case plan and cooperated with service providers is likewise not determinative of whether stagnation may be found. The key question for the court when considering whether stagnation has occurred is whether the parent has made progress in ameliorating the conditions that led to state intervention. The SRS case plan is not intended to be a mere checklist the parent must satisfy to ensure the automatic return of the children to the parent's care, however. As this case demonstrates, even if a parent participates in every program set forth in SRS's plan,

the main concern must always be whether the individual parent has demonstrated the improvement contemplated at the time the children were removed from the parent's care. In this case, the court applauded mother's efforts and cooperation with SRS and others enlisted to help her regain custody of T.P. and D.M. It found that despite those efforts mother did not demonstrate the improvement expected of her and, thus, it found that circumstances have stagnated. The decision has sufficient support in the record and in the court's findings. Thus, mother's first attack on the termination order is unavailing.

¶ 8. Mother next argues that the court's decision to terminate her rights was unnecessary. She points to the court's conclusion that the children need stability and security, arguing that sacrificing the mother-child bond is unwarranted because T.P. and D.M. already feel stable and secure in their present foster home. This argument is without merit because it misconstrues the intent of the court's order. The court found that T.P., the older of the two children, would be sad and would mourn the loss of his relationship with mother, but that any emotional damage would not be irreparable. It balanced that harm with the certain damage that would occur if permanency were delayed or custody transferred to someone else. The court concluded that the uncertainty in the children's current relationship with mother "leaves them with no predictability or permanency. The children need to have a permanent home and a reliable stable relationship in a home where they know they will be loved and kept safe." In other words, keeping mother in their life through a long-term foster care arrangement would be harmful because it would prolong the lack of permanency and deprive the children's lives of the predictability that the court found the children need to thrive. Mother has not shown any error in that finding, or the ultimate conclusion that the children's best interests mandate termination.

*Affirmed.*