*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-349

JANUARY TERM, 2016

| | |
|---|---|
| In re F.B., Juvenile | } APPEALED FROM:<br>}<br>} Superior Court, Bennington Unit,<br>} Family Division<br>}<br>} DOCKET NO. 122-12-14 Bnjv<br><br>Trial Judge: William D. Cohen |

In the above-entitled cause, the Clerk will enter:

Father appeals the termination of his parental rights with respect to his son, F.B. We affirm.

F.B. was born on November 26, 2014, and placed in the custody of the Department for Children and Families (DCF) under an emergency care order issued a few days after his birth. DCF then placed the child with the same foster family that was, and is, caring for his older brother, who was born in December 2013 and was previously ordered into DCF custody. On February 6, 2015, the court found F.B. to be a child in need of care or supervision (CHINS) following a contested hearing. A disposition hearing was scheduled for March 26, 2015, but on March 2, 2015, DCF filed a petition to terminate the mother's and father's parental rights with respect to F.B., stating that there was no likelihood that the parents would be able to resume their parental rights within a reasonable period of time, as evidenced by the facts set forth in the CHINS petition and the disposition case plan. DCF moved to consolidate this termination petition with its petition that had been filed in November 2014 seeking termination of parental rights with respect to F.B.'s older brother, but the family court denied the motion.[1] The court considered DCF's termination petition at F.B.'s initial disposition hearing on June 18, 2015. On August 28, 2015, the court issued an order granting DCF's petition and terminating mother's and father's parental rights with respect to F.B. Only father appeals that decision. DCF and F.B. ask this Court to affirm the family court's decision.

On appeal, father first argues that the family court erred by treating this case as if DCF was seeking termination at a post-disposition hearing. In particular, he argues that the court erred by conducting a two-step analysis, first determining that there had been a substantial change in material circumstances caused by stagnation in the parents' ability to care for F.B., and second concluding that terminating the parental rights was in F.B.'s best interest under the statutory criteria. Father argues that the court's error was prejudicial because it "changed the

---

[1] The family court terminated the parents' rights with respect to F.B.'s older brother in June 2015, and a panel of this Court affirmed that termination order in October 2015. See In re K.B., No. 2015-244, 2015 WL 6395422 (Vt. Oct. 21, 2015) (unpub. mem.), https://www.vermontjudiciary.org/LC/unpublishedeo.aspx.

calculus of the case" in that termination at initial disposition is an extreme remedy that is appropriate only as a last resort. According to father, by proceeding as if DCF was seeking a modification of a previous order, the family court authorized itself to look backwards at what had transpired in the past when its focus should have been on a prospective examination of the parents' potential to parent F.B. We agree that the family court unnecessarily considered whether there were changed circumstances, given that DCF's petition sought termination at initial disposition, but we do not agree that the court's error prejudiced father.

The family court may terminate parental rights either at initial disposition or in a post-disposition hearing seeking modification of a prior order. In re J.T., 166 Vt. 173, 177 (1997). When terminating parental rights at initial disposition, the court need determine only that termination "is in the child's best interests" after reviewing the statutory criteria. In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29. In contrast, when termination is sought after initial disposition through modification of a prior order, the court must conduct a two-step analysis that requires the court to first find "that there has been a substantial change in material circumstances" and second "that termination of parental rights is in the child's best interests." In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.). Thus, in the latter circumstance, the court must make the initial threshold showing of changed circumstances that is inapplicable when termination is sought at the initial disposition hearing.

Whether the State seeks termination of parental rights at initial disposition or in the context of a post-disposition petition to terminate parental rights, the court must consider the four best-interest factors enumerated in 33 V.S.A. § 5114(a), the most important of which requires the court to "consider the parent's prospective ability to parent the child." In re B.M., 165 Vt. 331, 337 (1996). Although we have cautioned that termination at initial disposition should be rare, we have not adopted a separate or more stringent best-interests standard in such cases, compared to cases involving termination after the initial disposition. See In re B.M, 165 Vt. 194, 199-200 (1996) (rejecting father's argument that parental rights may be terminated at initial disposition only in cases involving egregious abuse). Rather, we rely on the rigorous standards articulated in our statutes and case law requiring a showing of clear and convincing evidence that termination is in the best interests of the child under the enumerated statutory criteria. See In re J.T., 166 Vt. at 177 (observing that parental rights may be terminated "at the initial disposition hearing if the court finds it to be in the best interests of the child to do so"); see also In re D.R., 136 Vt. 478, 480-81 (1978) (construing likelihood-of-resuming-parental-duties criterion "as evincing a legislative policy . . . that total termination of parental rights will not be ordered in the first instance if there is a reasonable possibility that the causes and conditions which led to the filing of the petition can be remedied and the family restored within a reasonable time").

In short, the best-interest analysis is the same for both types of proceedings, requiring a prospective review of the parent's ability to resume parental duties within a reasonable period of time, and a consideration of the other statutory factors. In this case, the family court's consideration of the inapplicable issue of stagnation did not negate the court's need to address the applicable best-interests criteria. Although the family court must consider a parent's prospective ability to parent in determining whether he or she will be able to resume a parental role within a reasonable period of time, "[p]ast circumstances that have affected the parent-child relationship will of course be relevant to whether a parent can resume a caregiving role." In re B.M., 165 Vt. at 337; see In re J.B., 167 Vt. 637, 639-40 (1998) (mem.) (rejecting mother's argument that family court "punishe[d] her for past bad behavior" in considering her sex-offense history, and stating that while critical inquiry addresses prospective ability to parent, past

conduct may inform that inquiry). Here, the court's consideration of father's past conduct informed its consideration of whether father would be able to assume parental duties within a reasonable period of time. We find no reversible error simply because the court engaged in an additional and inapplicable analysis of whether there were changed circumstances due to stagnation.

Next, father argues that the family court improperly relied on the fact that DCF declined to allow father unsupervised time with his child as a reason to terminate his parental rights. In analyzing the third and most important of the best-interest criteria—whether father would be able to resume his parental duties within a reasonable period of time—the court stated that the primary obstacle to reunification was father's poor attendance at scheduled visits with F.B. and his minimal interactions with his son on the occasions he did attend, which made it difficult for him to bond with the child and incorporate any techniques he could have learned from parenting classes. The court then noted that father "has been unable to have unsupervised time with his son because of his status as a sex offender, and that would complicate any future reunification." According to father, this finding demonstrates that this is a situation where the State—DCF— created the barrier that formed the basis for termination.[2]

We disagree. One significant concern considered by the court in terminating father's parental rights is that he had failed to accept responsibility for and improve upon several of the conditions that led to a termination of his parental rights with respect to F.B.'s older brother. Most significantly, father attended few visits with F.B. and showed little interest in interacting with F.B. on those occasions when he did visit him, resulting in a lack of any bond between him and the child. The court found that over time father had consistently failed to prioritize time with F.B. or his brother, as evidenced by the fact that he attended a small percentage of the visits and left early or neglected to fully engage with the children on the few occasions when he did attend the visits. As a result, father was not gaining and implementing the skills that are crucial to raising F.B. safely. In short, the court's statement regarding the potential impact of DCF's restriction on his visits was not a significant basis for the termination order, and any error in noting DCF's restriction would not provide a basis for reversal. Cf. In re C.P., 2012 VT 100, ¶ 40, 193 Vt. 29 (concluding that although family court made some findings regarding circumstances that were beyond parents' control, court made other findings "demonstrate[ing] that termination was caused primarily by factors within parents' control"); In re D.M., 2004 VT 41, ¶ 6, 176 Vt. 639 (mem.) ("That [mother] was unable to engage in therapy for a period of time with a particular therapist because of circumstances that were admittedly out of her control is, ultimately, irrelevant to whether she made progress in improving her parenting skills.").

Finally, father argues that the court's findings do not support its conclusion that he would be unable to resume his parental duties within a reasonable period of time, insofar as the court failed to engage in an analysis of what would be a reasonable period of time from the perspective of F.B. According to father, this is not a situation where a reasonable period of time is self-evident. For the reasons stated above, we conclude that the record supports the court's determination that father is unlikely to be able to resume his parental duties within a reasonable period of time. As noted, the court relied heavily on the fact that father had failed to take advantage of visits offered to give him and the mother an opportunity to bond with F.B. and his

---

[2] The barrier to unsupervised contact did not arise from any condition of probation or parole, and father had completed his sex offender treatment for the offenses he had committed many years prior.

3

older brother.  The court relied on F.B.'s tender age; his need to be in a stable home; the fact that his foster family was able to provide a stable home to F.B. and his brother; and the unlikelihood that father would be able to assume parental responsibilities in a reasonable time in light of father's continuing inability or unwillingness to spend the time necessary to position himself to play a productive role in F.B.'s life.  See In re C.P., 2012 VT 100, ¶ 30 (stating that in considering whether parent can resume parental duties within reasonable period of time, reasonableness "is measured from the perspective of the child's needs, and may take account of the child's young age or special needs" (citation omitted)).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice