*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-020

MAY TERM, 2016

| | |
|---|---|
| In re N.D., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Windham Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 60-5-14 Wmjv |
| | |
| | Trial Judge: Karen R. Carroll |

In the above-entitled cause, the Clerk will enter:

Both mother and father independently appeal a decision of the superior court, family division, terminating their parental rights with respect to their daughter, N.D. We affirm.

The family division made the following findings. N.D. was born in June 2013. In May 2014, the court issued an emergency temporary care order removing the child from her home and placing her into state custody based upon mother having a mental health crisis and reportedly being abused and physically restrained by father. In August 2014, the court issued an order finding N.D. to be a child in need of care and supervision (CHINS) based on the parties' stipulation.[*]

In September 2014, the Department for Children and Families (DCF) filed an initial disposition case plan that had a single goal of reunification with one or both parents by May 2015. In November 2014, without objection from either parent, the trial court adopted the case plan, which was later amended to have concurrent goals of reunification or adoption by June 2015. The plan required both mother and father, among other things, to complete substance-abuse evaluations and follow treatment recommendations, attend weekly individual therapy sessions, participate in all scheduled visits with N.D., and successfully complete a parenting program. Father was also required to participate in anger management counseling and to maintain safe and stable housing.

In June 2015, DCF filed a petition to terminate the parental rights of both father and mother with respect to N.D. In December 2015, following a two-day hearing held the previous month, the family court granted the petition. After setting forth detailed findings, the court concluded that there was a change of circumstances as the result of stagnation of the parents'

---

[*] Apparently because father's parentage had not been established, father was not a party at the time of the May 2014 temporary care order or a party to the CHINS stipulated order.

ability to care for N.D., who had been in DCF custody at that point for nineteen months, nearly two-thirds of the child's life. The court explained that neither parent had successfully engaged in substance-abuse treatment or consistently participated in visits with N.D. The court further concluded that the statutory best-interests factors favored termination, noting in particular that neither parent would be able to resume parental duties within a reasonable period of time because they were in no better position to parent at the time of the termination hearing than they had been when N.D. first came into state custody more than a year and a half earlier.

On appeal, father argues that neither the evidence presented at the termination hearing nor the family court's findings support the court's conclusions that his parenting ability had stagnated or that he would be unable to parent N.D. within a reasonable period of time. Father contends that, in terminating his parental rights, the court focused primarily on his failure to acknowledge his substance-abuse problem and obtain appropriate treatment, but that there was no evidence that his use of any substance had an adverse impact on his ability to parent N.D. In fact, father argues that the court had no basis to even find that father had a substance-abuse problem requiring treatment.

We find no merit to this argument. Father has a criminal history involving drugs. He was incarcerated between 2008 and 2012 for felony possession of cocaine and misdemeanor possession of marijuana. Among the risk factors identified in the disposition case plan were domestic violence and substance abuse. Accordingly, the case plan called for father, among other things, to complete a substance-abuse evaluation and follow recommendations resulting from the evaluation. Father did not object to or challenge the case plan. Nor did father attend a drug and alcohol assessment until March 2015, ten months after N.D. was taken into custody. Moreover, father stated at the assessment that he was there for the evaluation only and did not intend to participate in any recommended treatment. When confronted by DCF about his refusal to obtain treatment, father first insisted that drugs were not an issue for him but later maintained that he did not have enough time to engage in treatment. Father tested positive for marijuana as well as other substances similar to those found in mother's urinalysis at the time N.D. was taken into state custody. In the fall of 2014, father's physician expressed concern about the "cocktail" of drugs father was taking for pain, particularly because there was no diagnosis that explained his pain. In June 2015, father was diagnosed with chronic pain syndrome, but there was no evidence that father engaged in regular treatment more than a few weeks.

In short, there was a basis for DCF to require father to engage in substance-abuse evaluation and treatment, and father did not oppose the case-plan requirement that he do so. Accordingly, his failure to do so, in combination with several other factors noted by the court— including his inconsistent visitation and his failure to obtain stable housing or employment— supported the court's conclusion that there was stagnation and that father would be unable to resume his parental duties within a reasonable period of time from the perspective of N.D. See In re D.M., 2004 VT 41, ¶ 5, 176 Vt. 639 (mem.) ("Stagnation may be found if the parent has not made the progress expected in the plan of services for the family despite the passage of time.").

Father's reliance upon In re T.M., 2016 VT 23 is unfounded. That case's holding was "narrow and closely tied to the facts of [the] case," id., ¶ 23, which revealed that the father had

satisfied most of the case plan goals, including engaging in substance-abuse treatment, but that his parental rights were nonetheless terminated based solely on positive test results unconnected by any testimony to either his progress in the treatment or his parenting ability. Id. ¶¶ 14, 18-19. Here, in contrast, father failed to meet many of the critical case-plan goals, including the requirement that he engage in recommended substance-abuse treatment. This is a situation where the subject child was taken into state custody when she was less than a year old and remained in foster care for over a year and a half while father made little progress toward reunification. Father remained unemployed and without stable housing, and his inconsistent visits with N.D. never progressed to in-home or unsupervised visits. We find no basis to disturb the family court's termination of father's parental rights based on the record before us.

Regarding mother, she argues that: (1) the family court failed to adequately explain its conclusion that she would not be able to resume parental duties within a reasonable period of time; (2) the court impermissibly collapsed the change-of-circumstances and best-interests components of the two-part analysis for modifying disposition orders; and (3) the evidence does not support the court's conclusion that mother would be unable to resume her parenting duties within a reasonable period of time.

Mother first argues that the court failed to adequately explain its decision when it referenced "the reasons stated above" as a basis for the conclusion that she would be unable to resume parental duties within a reasonable period of time. We disagree. This is not a situation where this Court is left to speculate as to the basis of the family court's decision—or more particularly its determination that mother would not be able to resume her parental duties within a reasonable period of time. The court explicitly acknowledged its duty to engage in a two-step analysis in considering whether there were changed circumstances and, if so, whether the child's best interests required termination of parental rights. See In re S.M., 163 Vt. 136, 138-39 (1994) (explaining two-step analysis for modifying disposition orders based on changed circumstances and best interests of child).

In explaining the existence of changed circumstances by way of stagnation, the family court stated that mother had "consistently refused to follow [substance-abuse] treatment recommendations" or participate in urinalysis testing for DCF despite having a serious substance-abuse problem and had not consistently visited N.D, which resulted in stress to the child and decreased visits. At the end of its discussion on stagnation, the court stated that there was no indication that the parents' problems would be resolved within a reasonable period of time. Then, in discussing the statutory best-interests factors, the court indicated that "for the reasons stated above," neither parent would be able to resume parenting duties within a reasonable period of time. The court explained that "[i]n refusing to address their own serious issues for an unacceptable period of time, the parents are in no better position to parent now than they were in May 2014 when [N.D.] came into custody." The court's explanation of how the parents had made little progress with respect to critical components of the case plan aimed at allowing them to reunite with N.D., which was supported by eighteen pages of detailed findings, adequately explained the basis of the court's determination that neither parent would be able to resume parental duties within a reasonable period of time.

3

Mother argues, however, that the family court impermissibly collapsed the backward-looking changed-circumstances determination and the forward-looking best-interests factors, particularly the question of whether parental duties could be resumed within a reasonable period of time. We agree that the reasonable-period-of-time inquiry is forward looking, but that "does not mean . . . that past events are not relevant to whether the parent can resume parental duties." In re B.M., 165 Vt. 331, 337 (1996); see also In re D.S., 2014 VT 38, ¶ 22, 196 Vt. 325 ("Of course, past events are relevant to [the forward-looking reasonable-period-of-time] analysis."); In re J.B., 167 Vt. 637, 640 (1998) (mem.) (stating that while mother is correct that past conduct is no barrier to resuming parental responsibilities, family court did not err in concluding that mother would be unable to resume her parenting duties within a reasonable period of time "in light of the detailed evidence about the extent of mother's past behavioral problems and the lack of certainty about the extent of her progress"). Here, the court explained how N.D. had been taken into state custody at the age of eleven months and remained with the same foster family for over a year and a half—again, more than half of N.D.'s entire life—and yet neither parent had made significant progress in the most crucial areas with respect to reunification: addressing substance-abuse and mental-health issues and engaging in consistent visitation so that they could progress to in-home and unsupervised visitation. In short, the court looked forward and found that, given the length of time that had passed and the parents' failure to address critical concerns that were preventing them from reuniting with N.D., they would not be able to resume parental duties within a reasonable period of time. Although many of the court's factual findings were relevant to both the stagnation and resumption-of-parental-duties-within-a-reasonable-time analysis, the court did not improperly collapse the two steps.

Mother further argues that she made significant progress toward reunification and that the record does not support the family court's conclusion that she will be unable to resume her parental duties within a reasonable period of time. She states that she has failed to comply only with "technical aspects" of the case plan, noting that although she did not participate in a residential treatment program, as recommended, she participated in an outpatient medication-assisted treatment plan. Further, she blames DCF for her inconsistent visits, citing its "draconian" visitation protocol pursuant to which visits were canceled if she was even a few minutes late.

None of these arguments withstand the light of the record. The case plan required mother to follow all recommendations concerning substance-abuse and mental-health treatment, given her history of mental health problems and substance abuse. Nevertheless, she failed to engage in consistent mental-health therapy or follow through on a recommendation that she participate in and complete a residential treatment program. The court acknowledged that on the last day of the termination hearing mother reported having participated in an opiate replacement program but noted that mother provided no documentary evidence to corroborate this. The court concluded, however, that even if this were true, beginning such a program three months before the termination hearing and nearly a year and a half after N.D. was taken into custody was of limited use.

Regarding visitation, DCF's policy of cancelling a visit if the parents were even a few minutes late was put in place because the parents often did not show up for scheduled visits,

resulting in inconvenience for the foster parents and disappointment for N.D. As the court noted, the parents were unemployed and lived in the same town where the visits took place. The record does not support mother's suggestion that her unsatisfactory progress in connection with the myriad issues identified in the case plan, including consistent attendance at visits, was DCF's fault. Rather, the record supports the court's termination order, and particularly its conclusion that mother would not be able to resume her parental duties within a reasonable period of time from the perspective of N.D., who had progressed significantly over a lengthy period of time with the same foster family.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice