VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.     23-AP-090

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

AUGUST TERM,   2023

| | |
|---|---|
| In re Z.S., Juvenile<br>(S.L., Mother*) | APPEALED FROM:<br><br>Superior Court, Franklin Unit,<br>Family Division<br>CASE NO. 262-10-19 Frjv<br>Trial Judge: Mary L. Morrissey |

In the above-entitled cause, the Clerk will enter:

Mother appeals a family division order terminating her parental rights to Z.S., born in June 2016.  On appeal, mother argues that the evidence does not support the court's findings regarding mother's stagnation and that termination was in error because it was not necessary to protect Z.S.'s safety.  We affirm.

The court found the following.  In October 2019, the State filed a petition alleging that Z.S. was a child in need of care or supervision (CHINS).  The court issued an emergency care order for Z.S. giving custody to the Department for Children and Families (DCF).  Mother subsequently stipulated that Z.S. was CHINS due to lack of proper parental care.  Mother agreed that she was in possession of crack cocaine and drug paraphernalia, had used cocaine in the last few days, and would be unable to care for Z.S. due to her arrest and incarceration.  Mother was incarcerated from November 2019 until March 2020, and again from May 2020 to July 2020.  A disposition order was issued in August 2020.  The case plan goal was reunification with mother by December 2020.  The expectations for mother included the following: not using alcohol or illicit substances; engaging in a substance-abuse assessment; applying for a residential treatment program and completing it; attending scheduled visits; attending Z.S.'s medical appointments; signing releases; providing random drug screenings; engaging in mental-health counseling; and abiding by furlough conditions and remaining out of jail.

DCF initially placed Z.S. with his maternal great aunt and in January 2021 transitioned him to a foster home with his maternal grandparents after the aunt indicated she could no longer care for him.  Z.S. has been with foster parents since that time.  When he came into custody, Z.S. was emotional, immature for his age, and distrustful.  He also had genital warts.  He had special education needs and needed supports.  He has responded well to the structure and routine in his foster home.  His physical and emotional health have improved, and he has calmed down.  He engages in activities with friends and is on track at school.

Mother's contact with Z.S. was inconsistent, and she lacked stable housing. In November 2020, mother was arrested after she was found with four hundred bags of heroin. Mother was released on furlough in June 2021 and completed a residential treatment program the following month. She then moved to a transitional sober living environment for people being supervised by the Department of Corrections. Although mother made some positive steps forward, she repeatedly violated her furlough conditions and the rules of the transitional house. She used marijuana and tested positive for cocaine and other drugs. She also struggled to consistently participate in consistent substance-abuse counseling.

In April 2021, the State filed a petition to terminate mother's rights. On the first day of the hearing in March 2022, the court accepted the parties' agreement to extend the date for reunification with mother for four months in recognition of mother's consistent engagement with substance-abuse treatment and employment. One day later, the State moved for relief from judgment based on new information that mother had admitted to using crack cocaine over the previous two weeks. Mother did not contest the motion, and the matter was set for a hearing on the petition to terminate. Mother was terminated from the program at the transitional house after she admitted to using illicit drugs and not following rules.

The court held a final termination hearing over three days. The court determined that there was a change in circumstances due to mother's stagnation based on its findings that since Z.S. came into DCF custody in October 2019, mother had limited in-person contact with Z.S., was incarcerated for significant periods of time, and did not maintain sobriety. The court further concluded that termination was in Z.S.'s best interests. Z.S. developed a strong bond with his foster parents and adjusted well to his home, school, and community. Mother was not able to parent Z.S. within a reasonable time given Z.S.'s need for consistency and permanency. Z.S. was young and had been in custody for three years, yet mother had substantial work to complete to effectively parent. She had unresolved substance abuse and lacked stable housing. The court therefore granted the State's petition and terminated mother's parental rights. Mother appeals.

When the State moves to terminate parental rights after the initial disposition, the court must find first that there is a change of circumstances, 33 V.S.A. § 5113(b), and second, "that termination of parental rights is in the child's best interests." In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

Mother first argues that the evidence does not support the family division's determination that mother's progress stagnated and that there was a change of circumstances. Mother asserts that she had recently made significant progress, highlighting that she had enrolled in school, obtained a job interview, engaged in drug and alcohol counseling, and attended recovery support.

A change of circumstances is "most often found when a parent's ability to care for a child has either stagnated or deteriorated over the passage of time." In re D.S., 2016 VT 130, ¶ 6, 204 Vt. 44 (quotation omitted). "The key question for the court when considering whether stagnation has occurred is whether the parent has made progress in ameliorating the conditions that led to state intervention." In re D.M., 2004 VT 41, ¶ 7, 176 Vt. 639 (mem.).

2

Here, the evidence supports the court's findings regarding mother's progress towards addressing the case plan goals. Mother's substance use and related criminal charges were a large part of why Z.S. was removed from her custody. During the three years that Z.S. was in DCF custody, mother continued to use illicit substances, was arrested and reincarcerated, and did not successfully comply with treatment. Moreover, mother's in-person contact with Z.S. remained minimal. These findings amply support the court's conclusion that there was a change of circumstances due to stagnation.

Mother also contends that termination was in error because it was not necessary to protect the safety of Z.S. Mother claims that because Z.S. was in a safe environment, there was no need to terminate her rights. Mother's argument applies the wrong standard for assessing whether to terminate parental rights. As explained above, to terminate parental rights, the court must examine the child's best interests pursuant to the statutory factors. 33 V.S.A. § 5114(a); see In re J.M., 2015 VT 94, ¶ 12, 199 Vt. 627 (explaining that " 'best interests of the child' remains the touchstone and the court's 'paramount concern' in a termination-of-parental-rights proceeding").

Here, the trial court correctly applied the law and analyzed each factor. As part of its analysis, the court considered Z.S.'s important relationships, adjustment, and bonds, finding that mother loved Z.P. but that their relationship was impacted by mother's lengthy incarcerations and their minimal in-person contact. In contrast, Z.S. had strong bonds with his foster parents, foster parents were meeting his needs, and Z.S. was well adjusted to his home, school, and community. As to the most important best-interests factor—the likelihood that mother could resume parenting in a reasonable time—the court found that mother still had to do substantial work to effectively parent Z.S., who had a present need for consistency and permanency. See In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29 (explaining that "reasonableness of the time period is measured from the perspective of the child's needs"). There is no basis to overturn the court's decision.

Affirmed.


BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
William D. Cohen, Associate Justice


_____
Nancy J. Waples, Associate Justice


3