VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      23-AP-176



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

OCTOBER TERM,   2023

In re G.L., Juvenile
(J.L., Father\*)

} APPEALED FROM:
}
} Superior Court, Windham Unit,
} Family Division
} CASE NO. 21-JV-00710
Trial Judge: Jennifer Barrett

In the above-entitled cause, the Clerk will enter:

Father appeals from a family division order terminating his parental rights to his five-year-old daughter, G.L.\*  We affirm.

In May 2021, the State filed a petition alleging that G.L. was a child in need of care or supervision (CHINS) based on reports that mother and father were using and selling substances, had unsuitable housing, and frequently left G.L. with unsafe caregivers.  G.L. was placed in the custody of the Department for Children and Families (DCF) pursuant to an emergency care order and remained in DCF custody following a temporary care hearing.

Though G.L. was living with both mother and father at the time the State filed the CHINS petition, it was unclear whether father had been established as G.L.'s legal parent.  The court raised the issue of parentage at a status conference attended by both parents in June 2021, and mother's attorney indicated that she would discuss a stipulation with her client.  Ultimately, the State moved to establish father as G.L.'s legal parent on October 29, 2021.  The family division held a contested merits hearing on the CHINS petition on November 2, 2021, December 23, 2021, and May 4, 2022.  The court issued an order identifying father as G.L.'s legal parent on November 4, two days after the first hearing.  Father was subsequently assigned counsel, who was afforded time to review the November 2 hearing transcript, file objections, and conduct further cross-examination.  In June 2022, the court found that G.L. was CHINS in that she was without proper parental care necessary for her well-being.

A disposition hearing was held the same month.  The court adopted a case plan in a disposition order which set a goal of reunification with mother, father, or both by November

---

\*  Mother voluntarily relinquished her parental rights at the termination hearing, subject to the termination of father's rights.

2022. The action steps for father included engaging in services supporting his sobriety, receiving a mental-health evaluation, obtaining safe and stable housing, taking a parenting class, and attending DCF team meetings.

At the time the disposition order issued in August 2022, father had pending charges for drug-related crimes in New Hampshire, Massachusetts, and Vermont. Later the same month, he was incarcerated in Vermont. At the end of October 2022, the State sought to change the case-plan goal from reunification to adoption and filed petitions to terminate both parents' rights. Father remained incarcerated at the time of the final termination hearing in March 2023. The court took evidence and made the following findings relevant to this appeal.

Prior to the CHINS merits hearing, DCF drafted an initial case plan and provided it to father, giving him notice of the action steps DCF deemed necessary to support reunification. Father generally attended visits with G.L., but arrived late, did not attend pre-meetings, brought inappropriate snacks, and was angry, disorganized, and not open to feedback. He missed six weeks of visits in August 2021 while incarcerated, and another visit in February 2022 for the same reason. Father received drug treatment, but he declined all of DCF's requests for urine analysis testing. He admitted to a period of relapse in 2022.

Father attended some team meetings prior to his August 2022 incarceration, but was at times emotional and short-tempered, and his behavior was disruptive and upsetting for other attendees. On several occasions, father was asked to leave these meetings; on other occasions, he chose to leave. DCF took detailed notes and shared them with father at the end of the meetings. DCF provided father with information about how to access recommended resources. Father did not contact G.L.'s therapist or attend parent-teacher conferences when presented with opportunities to do so.

At the time of the termination hearing, father had not seen G.L. in person since his August 2022 incarceration. He wanted in-person visits, but did not want G.L. to see him wearing jail clothing or in a prison setting; DCF inquired about whether the Department of Corrections could accommodate visits on these terms, but received no response. G.L.'s therapists and mother also had concerns about in-person visits at the facility. G.L.'s foster parent attempted to support virtual visits, but was initially unable to navigate the technology. DCF sought to assist, but encountered technological barriers as a result of the State network. DCF ultimately purchased a tablet to facilitate father's remote visitation. By the time of the termination hearing, virtual visits were occurring biweekly, though G.L. at times refused to attend.

Following his August 2022 incarceration, father engaged in recovery and anger-management programming and took a parenting class. It was unknown to the court whether the recovery program involved counseling, or what treatment father would seek upon his release. Father did not obtain the mental-health evaluation required by the case plan. Father lacked suitable housing for G.L. and, when released, would need time to establish a residence suitable for G.L., ensure that only safe people would be allowed in the home, and demonstrate his ability to remain sober in the community. Ultimately, the family division concluded that father made no significant progress in satisfying the steps in the disposition case plan. This was in part due to his incarceration, which the court found was his responsibility.

The family division concluded that there was a change in circumstances justifying modification of the initial disposition order because father had stagnated in his progress toward the case plan goals. It therefore assessed the best-interests factors laid out in 33 V.S.A. § 5114(a). It found that G.L. had a strong bond with her foster family, with whom she had lived

for two years, and was fully integrated into their home and community, but that father did not play a constructive role in G.L.'s welfare and, even if he were immediately released, he would not be able to resume parental duties within a reasonable time. The court therefore granted the State's petition and terminated father's parental rights.

Father appeals, arguing that the delay in the appointment of his attorney at the outset of the case violated his due-process rights because the absence of legal guidance negatively affected his early engagement with DCF, prejudicing his ability to satisfy the case-plan goals. He also contends that the family division should not have considered that he had limited virtual visitation following his incarceration because the visits were hampered by technical issues outside his control, that its findings as to his progress in meeting the case-plan goals were clearly erroneous, that it erred in the stagnation analysis by considering his conduct prior to the disposition order, and that the determination that he would not be able to resume parenting in a reasonable time was not supported by the evidence.

We first conclude that father's due-process argument was not preserved for our review. See In re D.C., 157 Vt. 659, 660 (1991) (mem.) (holding that constitutional challenge to order terminating parental rights was not adequately raised below and therefore not preserved for appellate review). Though father argued below that the delay in appointment of counsel should be considered in the family division's stagnation analysis because it impacted his early engagement with services, he did not allege any violation of his due-process rights. Given that father's due-process argument was not presented to the family division "with specificity and clarity in a manner which gives the court a fair opportunity to rule on it[,]" we do not address it on appeal. Id.

We turn next to father's challenges to the family division's findings and conclusions. When considering a petition to terminate parental rights after an initial disposition order, the family division must first determine whether there has been a change in circumstances justifying modification of the original order, and, if so, whether termination is in the child's best interests. In re T.M., 2016 VT 23, ¶ 12, 201 Vt. 358; 33 V.S.A. §§ 5113(b), 5114. A change in circumstances most commonly arises from parental stagnation, which "may be found if the parent has not made the progress expected in the plan of services for the family despite the passage of time." In re D.M., 2004 VT 41, ¶ 5, 176 Vt. 639 (mem.). The family division has broad discretion in ruling on a petition to terminate parental rights. See id. "As long as the court applied the proper standard, we will not disturb its findings unless they are clearly erroneous, and we will affirm its conclusions if they are supported by the findings." In re G.S., 153 Vt. 651, 652 (1990) (mem.).

Father argues that the court's finding that he had limited virtual visits with G.L. while incarcerated should have played no role in the termination analysis because the visits were missed due to issues with technology which, he alleges, DCF did not appropriately overcome. Stagnation caused by factors beyond a parent's control cannot support the termination of parental rights, see In re S.R., 157 Vt. 417, 421-22 (1991), and the level of assistance DCF provides a parent is relevant to determining whether the State has met its burden of showing that a parent is unlikely to be able to resume parental duties within a reasonable time, see In re C.P., 2012 VT 100, ¶ 38, 193 Vt. 29. However, the family division's findings on this point—which father does not challenge—do not support a conclusion that the missed visits were attributable to factors beyond father's control or that DCF failed to provide appropriate assistance in this regard. The need for remote visitation was a consequence of father's incarceration, which was his responsibility. See In re D.S., 2014 VT 38, ¶ 26, 196 Vt. 325 ("[O]ur case law makes clear that a

parent is responsible for the behavior that leads to incarceration and for the consequences that come with such incarceration."). When technical difficulties arose, DCF took steps to overcome them and was ultimately successful. As a result, there is no basis to conclude that this circumstance undermined the family division's conclusion that the State met its burden of showing that father was unlikely to be able to resume parental duties within a reasonable time. See In re J.T., 166 Vt. 173, 180 (1997) ("Any assistance [the Department of Social and Rehabilitative Services] provides to troubled parents is, however, a factor in determining whether [the Department] met its burden of showing that a parent is unlikely to be able to resume parental duties within a reasonable period of time."). In any event, the frequency of virtual visitation following father's incarceration was just one finding among many supporting the family division's conclusion that father had stagnated in his progress toward the case-plan goal and was unable to resume parental duties within a reasonable time.

Next, father argues that the trial court's finding that he "made no progress" in meeting the disposition case plan goals was clear error. However, the family division did not find that father made "no" progress, but rather that he made "little" or "no significant" progress. Though the court recognized that following the issuance of the disposition case plan, father had engaged in recovery and anger-management programs and taken a parenting class, it also found that he had not obtained stable housing, demonstrated that he could maintain sobriety in the community, or received a mental-health evaluation. See In re A.F., 160 Vt. 175, 181 (1993) ("[T]he mere fact that a parent has shown some progress in some aspects of [their] life does not preclude a finding of changed circumstances warranting modification of a previous disposition order."). The court's finding as to father's progress toward the disposition case-plan goals was supported by the evidence and is not clearly erroneous. Id. at 178 ("When findings are attacked on appeal, our role is limited to determining whether they are supported by credible evidence.").

Father also suggests that the court erred by relying on evidence of his conduct prior to the issuance of the disposition case plan in determining that he stagnated in his progress toward its goal. Assuming for the sake of argument that this is an accurate characterization of the court's analysis, there was no reversible error because the court's findings as to father's progress after the disposition case plan issued are clearly distinguishable and amply support the conclusion that he stagnated in his progress toward its goals. See In re D.F., 2018 VT 132, ¶ 46, 209 Vt. 272 (holding erroneous finding pertaining to detail "not central to the court's decision" was harmless and did not warrant reversal).

Finally, father argues that the evidence did not support the trial court's conclusion that he would be unable to resume parenting within a reasonable time. See 33 V.S.A. § 5114(a)(3) (providing that in ruling on petition to terminate parental rights, "court shall consider the best interests of the child in accordance with . . . . the likelihood that the parent will be able to resume or assume parental duties within a reasonable time"). "The reasonableness of the time period is measured from the perspective of the child's needs," and may include consideration of a child's young age. In re C.P., 2012 VT 100, ¶ 30. Here, the family division noted that father had not been G.L.'s care provider during the two years the action had been pending, which represented approximately two-thirds of her life, and that permanency was of paramount importance for her well-being. It concluded that even assuming father was immediately released and promptly undertook the action steps in the case plan, he would not be able to resume parental duties within a reasonable time as measured from G.L.'s perspective. Father's contention that he demonstrated historically that he could maintain his sobriety and parent G.L. does not undermine the family court's analysis, which was appropriately "forward-looking" in character and focused on father's prospective ability to parent. See In re D.F., 2018 VT 132, ¶ 41. The family division

4

did not abuse its discretion in concluding that father would be unable to resume parenting within a reasonable time.

  Affirmed.


            BY THE COURT:


            _____
            Harold E. Eaton, Jr., Associate Justice


            _____
            Karen R. Carroll, Associate Justice


            _____
            Nancy J. Waples, Associate Justice