VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      24-AP-019



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,   2024

In re Z.W., Juvenile
(J.W., Father*)

}
}
}
}
}
}

APPEALED FROM:

Superior Court, Windsor Unit,
Family Division
CASE NO. 21-JV-00923
Trial Judge: Heather J. Gray

In the above-entitled cause, the Clerk will enter:

Father appeals the termination of his parental rights to three-year-old daughter Z.W.  We affirm.

Z.W. was born in April 2021.  The Department for Children and Families (DCF) had previously opened a family case due to concerns that mother was using illicit drugs during her pregnancy, and upon birth, Z.W. was diagnosed with neonatal abstinence syndrome.  In July 2021, the State filed a petition alleging that Z.W. was a child in need of care or supervision (CHINS) because mother had left the sober living community where she had been staying after Z.W. was born, refused to sign releases for DCF to confirm Z.W.'s ongoing medical care, and tested positive in June 2021 for cocaine, fentanyl, and buprenorphine.  DCF had also received reports of domestic violence between mother and father, who had recently split up, and illicit-drug use by father.  The court transferred custody of Z.W. to DCF in emergency and temporary care orders.

In September 2021, mother stipulated that Z.W. was CHINS due to mother's substance abuse and lack of engagement in services.  In December 2021, the court issued a disposition order establishing a permanency goal of reunification with mother or father.  The case plan adopted by the court contained action steps for both parents.  Father was expected to undergo a substance-abuse assessment, follow all provider recommendations, and submit to drug screening as requested by DCF.  Father was also expected to participate in a mental-health assessment, attend scheduled appointments with a therapist, sign releases for DCF, demonstrate the ability to regulate his emotions, engage in a domestic-abuse intervention program or domestic-violence counseling, refrain from using physical or verbal aggression towards others, and complete a parenting class.

In June 2022, the court approved an updated permanency case plan, which contained the same action steps for father. It also amended the permanency goal to reunification with either parent by September 2022.

In February 2023, DCF filed a petition to terminate the parental rights of mother and father. The court held a hearing over three days in July and September 2023. In December 2023, it entered a written order in which it made the following findings.

Mother was incarcerated for approximately eighteen of the twenty-eight months during which the CHINS case was pending. She refused to cooperate with DCF and there was no evidence that she had completed any of the action steps required by the case plan. She had not had contact with Z.W. for almost a year.

Father completed four of the ten action steps required by the case plan. As of July 2022, father was having weekly virtual visits with Z.W. and agreed to schedule in-person visits once or twice a month "when schedule permits." He had completed the Parenting with Respect program and was attending weekly groups for substance-use disorder.

However, between September and December 2022 father overdosed approximately four times. He resumed medication-assisted treatment after his last overdose. He started meeting with a mental-health counselor in July 2022, but there was no evidence as to how frequently he met with her or what they discussed, and his last session was in April 2023. The court did not find father to be credible in his claim that he had addressed his mental-health needs.

In April 2023, father's mother allowed him to move into her home in Springfield.[*] He and his mother had a turbulent relationship. She had been considered as a kinship placement option until an incident in September 2021 when father became angry and threatening toward her. She had not been involved with father or Z.W. since that time.

Father received Social Security disability income due to chronic back and knee pain. He aspired to become a tattoo artist, but the court found no evidence that he had made any efforts to achieve that goal.

The court concluded that both parents had stagnated in their progress toward reunification. Specifically, it found that father only completed four of the ten action steps expected by the case plan, did not consistently engage with DCF or maintain contact with Z.W., and had not provided primary and independent care for Z.W. in over two years. The court next considered the statutory best-interests factors. It found that Z.W. had a strong and loving bond with her foster parents and their children and was well-adjusted to their home and community. Neither mother nor father was likely to be able to resume parenting Z.W. within a reasonable time. Father had completed some action steps in the case plan but had not fully addressed his mental-health needs and had not provided proof of sustained sobriety since his last overdose in the fall of 2022. His housing situation was uncertain, and there was no evidence that he was able to provide for Z.W.'s daily and developmental needs. The court therefore concluded that termination of both parents' rights was in Z.W.'s best interests. Father appealed.

---

[*] Father's housing situation prior to April 2023 appears to have been unstable. At different points during the pendency of the case, he was reported to be staying with a friend in Brattleboro, at a homeless encampment in Burlington, and at a hotel.

When considering a petition to terminate parental rights, post-disposition, the court must first determine whether there has been a change in circumstances sufficient to justify modifying the existing disposition order. In re B.W., 162 Vt. 287, 291 (1994); 33 V.S.A. § 5113(b). A change in circumstances "is most often found when a parent's ability to care for a child has either stagnated or deteriorated over the passage of time." In re S.W., 2003 VT 90, ¶ 4, 176 Vt. 517 (mem.) (quotation omitted). If the court finds a change in circumstances, it must then consider whether termination is in the child's best interests using the factors set forth in 33 V.S.A. § 5114(a). "As long as the court applied the proper standard, we will not disturb its findings unless they are clearly erroneous, and we will affirm its conclusions if they are supported by the findings." In re N.L., 2019 VT 10, ¶ 9, 209 Vt. 450 (quotation omitted).

Father argues on appeal that the court erred in finding that he had stagnated in his ability to parent Z.W. He first contends that the July 2021 temporary care order required DCF to provide visitation five days a week, but that he was only given two in-person visits per month along with virtual visits. He argues that this was a factor beyond his control and that without full visitation, he was unable to prove that he could care for Z.W.

We have observed that "stagnation caused by factors beyond the parents' control could not support termination of parental rights." In re S.R., 157 Vt. 417, 421-22 (1991). In S.R., we rejected the argument that stagnation was caused by the State where the record showed that the parents had refused to participate in the case plan. Id. at 422. The circumstances of this case likewise support the court's finding of stagnation. The court found that father made progress in some aspects of the case plan but failed to maintain sobriety for a significant period of time, address his mental-health needs, or demonstrate an ability to care for Z.W. on a full-time basis. These findings are supported by the record and in turn support the court's conclusion that there had been a change in circumstances sufficient to justify modifying the disposition order. See In re D.M., 2004 VT 41, ¶ 5, 176 Vt. 639 (mem.) ("Stagnation may be found if the parent has not made the progress expected in the plan of services for the family despite the passage of time.").

While father blames his lack of progress as a caregiver on DCF's failure to facilitate visitation every weekday pursuant to the July 2021 temporary care order, father never asked the court to enforce the visitation requirement in that order. Moreover, the temporary care order was superseded six months later by the January 2022 disposition order, which ordered that visitation occur "[a]s agreed to" between DCF and parents. Father did not object to the disposition order or appeal it, and he never asked the court for more visitation. Father also admitted at the termination hearing that he had missed several virtual and in-person visits for various reasons not attributable to DCF, including a period of incarceration and a missed alarm. We are therefore unpersuaded that father's limited contact with Z.W. and consequent lack of progress as a caregiver was attributable to DCF.

Father next claims that the court erred in considering his relapses to be evidence of stagnation. Father argues that this case is similar to In re T.M., in which we concluded that evidence of a father's marijuana use, by itself, did not support the court's determination that he had stagnated. 2016 VT 23, ¶ 20, 201 Vt. 358. In In re T.M., the State presented no evidence to show how the father's marijuana use impacted his opiate addiction treatment or his ability to parent his children, and the remaining evidence in the case did not support a finding of stagnation. Id. ¶¶ 20-22. We therefore reversed the decision terminating the father's parental rights, observing: "Given the cycle of forward progress and backsliding that individuals in treatment for substance abuse often go through, we cannot assume that any and all evidence of substance abuse by a parent in treatment is indicative of stagnation." Id. ¶ 21. We emphasized

that our holding was narrow and specific to the facts of that case, noting that the father had maintained suitable housing for the children, obtained a stable full-time job with the goal of supporting the children, spent as much time with them as permitted, never missed a family time coaching session, and had a demonstrated bond with the children. Id. ¶ 23.

The circumstances of this case are substantially different from In re T.M. Here, the evidence showed that in the fall of 2022, father repeatedly overdosed. At least one of those overdoses was on fentanyl, the same type of drug for which father was supposed to be seeking treatment under the case plan. Following his relapses, father switched to a new treatment provider but did not provide releases to DCF to allow it to confirm his engagement or progress in treatment. This evidence was plainly relevant to the stagnation analysis and supported the court's finding that father had failed to demonstrate a sustained period of sobriety since September 2022 or cooperate with DCF and therefore had failed to make adequate progress in "ameliorating the conditions that led to state intervention." In re D.M., 2004 VT 41, ¶ 7. Further, the evidence of father's illicit drug use was not the only evidence supporting the stagnation finding. The court found that father failed to address his mental-health needs or consistently visit Z.W. Unlike in T.M., father did not have a demonstrated ability to meet Z.W.'s developmental and emotional needs. Under these circumstances, we decline to disturb the court's conclusion that father had stagnated in his progress toward reunification.

Father does not challenge the court's assessment of the best-interests factors, which are supported by its findings and in turn support its conclusion that termination was in Z.W.'s best interests. We therefore affirm the decision below.

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice

_____
Karen R. Carroll, Associate Justice

_____
William D. Cohen, Associate Justice