VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    25-AP-253



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

DECEMBER TERM,   2025

| | |
|---|---|
| In re N.S., Juvenile<br>(C.S., Father\* and A.B., Mother\*) | APPEALED FROM:<br><br>Superior Court, Orleans Unit,<br>Family Division<br>CASE NO. 23-JV-00362<br>Trial Judge: Justin P. Jiron |

In the above-entitled cause, the Clerk will enter:

Mother and father appeal a family division order terminating their parental rights to N.S., born in August 2022.  On appeal, father argues that the evidence does not support the court's determination that father stagnated in his progress towards caring for N.S. and did not play a constructive role in the child's life.  Mother contends that termination was premature, and the evidence showed that parents could have reunified with more time.  We affirm.

The court found the following.  N.S. came to the attention of the Department for Children and Families (DCF) when he was five months old based on concerns about domestic violence between mother and father and mother's mental health.  A subsequent assessment revealed an additional concern about parents' substance use.  In March 2023, the State filed a petition alleging N.S. was a child in need of care or supervision (CHINS).  N.S. was initially placed with his maternal grandparents under a conditional custody order (CCO), but that was revoked in July 2023 and custody was transferred to DCF.  He was placed with a foster family, where he has since remained.  In August 2023, parents stipulated that N.S. was CHINS due to parents' mental-health struggles and illicit substance use.

N.S. has significant health issues.  He has a condition that causes complications with swallowing and affects his throat and airway.  Choking is a particular hazard.  N.S.'s condition causes droopy eyelids, and he has very few teeth.  He also has difficulty regulating his body temperature.  N.S. has a severe egg allergy.  N.S. is also autistic and needs psychological support.  He requires routine and has difficulty with changes.  To properly deal with his health needs, his caregiver must take the Basic Life-Saving course and know how to administer an Epi-Pen.  N.S. requires frequent medical appointments.  He will continue to require support and medical appointments for dermatology, endocrinology, ophthalmology, digestive issues, gastroenterology, audiology, speech pathology, and ear, nose, and throat issues.

The State filed petitions to terminate parents' rights based on their lack of progress. Following a hearing in June 2025, the court found that parents had stagnated in their ability to care for N.S. Mother made little progress towards the action steps identified in the disposition case plan. She engaged in substance-use treatment but had relapses in 2025, tested positive for substances, and declined inpatient treatment that was offered. She did not engage in recommended mental-health treatment and did not take medication as prescribed. She was involved in a violent altercation with her grandparents in which she brandished a knife. She lacked stable housing and did not demonstrate an ability to place N.S.'s needs before her own. Until a month before the termination hearing, she had not visited with N.S. since the summer of 2024. Although she alleged that she understood N.S.'s medical diagnoses, she did not engage with providers or demonstrate an understanding of his specialized needs. She attended few medical appointments for N.S. She did not complete the safety course needed to care for N.S.

The court similarly found that father had stagnated in his progress. The court acknowledged that father had taken a parenting class and completed the life-saving course and Epi-Pen training. Father had not, however, addressed his lengthy and heavy use of cannabis. Father used cannabis daily and expressed that he did not see a problem with continuing such use even with custody of N.S. He did not engage with substance-use treatment or education. He did not demonstrate an understanding of the impact of his use on his ability to provide care for N.S. Although he indicated that he understood he would need to taper down his use when caring for N.S., he had not taken steps to do so. He also lacked suitable housing. Importantly, he did not demonstrate an understanding of N.S.'s specialized needs and an ability to provide for them. His contact with N.S. was limited to one hour a week. He attended few medical appointments and expressed frustration during visits about not being able to provide N.S. with food or liquids, focusing on his own needs instead of what was necessary for N.S.

The court also found that termination was in N.S.'s best interests. Parents had a positive but minimal relationship with N.S. N.S. was well adjusted to his current placement and had a loving relationship with his foster parents and other children in their family. His medical needs were met. He was happy and thriving in his current environment. Neither parent would be able to resume parenting within a reasonable time. Mother made minimal progress over the two years N.S. was in custody and father continued to have significant barriers to reunification. They did not play a constructive role in N.S.'s life, given their limited contact with him and lack of attendance at medical appointments or understanding of N.S.'s needs. Therefore, the court granted the State's petition to terminate parents' rights. Parents appeal.

When the State moves to terminate parental rights after the initial disposition, the court must first find that there is a change of circumstances, 33 V.S.A. § 5113(b), and second, "that termination of parental rights is in the child's best interests." In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

On appeal, father first argues that the evidence does not support the court's finding that there was a change of circumstances due to father's stagnation. To modify a disposition order, there must be a change of circumstances in the child's life, which is often demonstrated by parental stagnation. In re D.M., 2004 VT 41, ¶ 5, 176 Vt. 639 (mem.). Stagnation arises when a parent "has not made the progress expected in the plan of services for the family despite the

passage of time." Id. The main concern is whether "the individual parent has demonstrated the improvement contemplated at the time the children were removed from the parent's care." Id. ¶ 7.

Father argues that domestic violence was the reason that N.S. came into custody and he adequately addressed the case-plan goals related to that by taking classes and enrolling in the Circles of Peace program. Father contends that his cannabis use was not a cause for N.S. coming into custody and that, in any event, he was taking steps to learn how his marijuana use could affect his parenting. In addition, father asserts that the State failed to connect father's use to any parenting deficiency. See In re T.M., 2016 VT 23, ¶ 23, 201 Vt. 358 (holding that State did not demonstrate stagnation where father participated in substance-abuse treatment, abstained from illicit opioids, and played a constructive role in children's lives but used marijuana in undetermined amount).

There is no merit to father's assertion that his cannabis use was irrelevant to and not a cause of N.S. coming into custody. Although DCF first became involved with parents due to reports of domestic violence, a subsequent assessment caused DCF to also become concerned about parents' substance use and this use was certainly part of the concerns that led to the filing of the CHINS petition. The affidavit supporting the CHINS petition described the risks to N.S., including father's significant daily marijuana use while caring for N.S. Moreover, parents stipulated to merits and agreed that N.S. was CHINS due to parents' struggles with mental health and illicit substance use. The resulting case plan noted that parents had a history of substance use and had used substances while caring for N.S. There were several action steps for father related to substance use, including obtaining help to support sobriety and engaging in a substance-use evaluation. This case differs from In re T.M., 2016 VT 23, where the concern was over the parent's opioid use, the parent was undergoing treatment for opioids, had abstained from using opioids, consumed an undetermined amount of marijuana, and there was no evidence on how the marijuana use impacted his parenting. In contrast, here, father's heavy cannabis use while caring for N.S. was identified as a risk, father did not engage in substance-use treatment, and father lacked insight on how his use would impact his ability to care for N.S., who was young and had specialized medical needs.

Moreover, the court's decision on father's stagnation was supported by other evidence. The court found that father did not make progress towards other important aspects of the case plan, such as obtaining suitable housing. Most importantly, father did not understand N.S.'s specialized medical needs and situation. Father attended only a few medical appointments; he focused on his own needs instead of those of N.S.

Father next argues that the court erred in finding that he did not play a constructive role in N.S.'s life, highlighting the fact that father visited with N.S. for one hour per week and engaged with him in an appropriate manner. The court found that father did not play a constructive role in N.S.'s life because he did not attend N.S.'s medical appointments or demonstrate an understanding of N.S.'s special needs. These were relevant considerations to father's impact on N.S.'s well-being and the court acted within its discretion in finding that father's role was not constructive.

On appeal, mother argues that the court's termination decision was premature and that the court failed to account for mother's young age in assessing her progress. Mother was seventeen when the CHINS petition was filed, and she contends her late progress was appropriate for her level of maturity. She also argues that some services were not available to her because she was

under eighteen and this was a factor beyond her control that impeded progress towards reunification.

Mother has not shown how she preserved this issue for appeal. Mother did not object to the case plan requirements below, and it does not appear from the record that she requested different services or contended that her lack of progress was due to her inability to access adult services. See In re A.M., 2015 VT 109, ¶ 28, 200 Vt. 189 (providing that for issue to be preserved for appeal it must be presented with specificity and clarity to trial court).

In any event, the record supports the court's findings that mother's progress stagnated for reasons within her control. Mother asserts that she could not receive a particular mental-health diagnosis because she was not yet an adult and she could not receive certain services. However, the court found that mother did not make significant progress on any of the identified action steps. She declined inpatient treatment for substance use and did not engage in recommended mental-health treatment or take medication as prescribed. She was involved in a violent altercation with her grandparents in which she brandished a knife. She lacked stable housing. She attended few medical appointments. She did not visit with N.S. for a long period of time. She did not complete a safety course needed to care for N.S. or engage with medical providers. She did not understand his specialized needs. These facts all support the court's finding that mother's progress stagnated due to factors within her control.

Similarly, the findings support the court's determination that termination was in N.S.'s best interests. Contrary to mother's assertion, the court was not required to consider the length of time needed to reunify from mother's perspective; rather, the critical question was whether mother could parent within a reasonable time, as measured from N.S.'s perspective. See In re N.L., 2019 VT 10, ¶ 9, 209 Vt. 450 (reiterating that most important factor is likelihood parent can resume parental duties within reasonable time "from the perspective of the child's needs"). Given N.S.'s young age, special medical requirements, need for stability, and time in custody, the court acted within its discretion here in concluding that mother would not be able to parent him in a reasonable time.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

William D. Cohen, Associate Justice

Nancy J. Waples, Associate Justice

4